IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JEFFREY A. WIEST,** *et al.*, | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **THOMAS J. LYNCH,** *et al.*, | : | |
| Defendants. | : | No. 10-3288 |

**M E M O R A N D U M**

PRATTER, J.                                                                                                          JULY 21, 2011

**INTRODUCTION**

      Jeffrey Wiest has sued his former employer, Tyco Electronics Corp. ("Tyco"), along with a number of Tyco officers and management-level employees namely, Thomas Lynch, Terrence Curtin, Charles Post, and Charles Dougherty. In Count I of his Complaint, Mr. Wiest alleges that the Defendants violated the anti-retaliation provision of the Sarbanes-Oxley Act of 2002 ("SOX"), Pub. L. No. 107-204, § 806(a), 116 Stat. 745, 802 (codified at 18. U.S.C. § 1514A (2006)), by retaliating and discriminating against him after he engaged in allegedly protected activity. In Counts II and III of the Complaint, Mr. Wiest asserts state law claims of intentional infliction of emotional distress and wrongful termination. In Count IV, Plaintiff's wife, Laura Wiest ("Mrs. Wiest"), asserts a state law claim for loss of consortium.

      The Defendants have moved to dismiss the entire Complaint. For the reasons set forth below, their motion will be granted.

**JURISDICTION**

The Court has original subject matter jurisdiction over the SOX claim pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**FACTUAL AND PROCEDURAL BACKGROUND**

For the purposes of a motion to dismiss, all facts alleged in the complaint are considered to be true. On that basis, the facts are as follows.

Mr. Wiest is a former employee of Tyco. Before his termination in April 2010, Mr. Wiest had worked for 31 years in Tyco's accounts payable department. Throughout his employment, Mr. Wiest had consistently received high ratings in his job performance reviews, especially in the areas of "integrity" and "ethics and values." He received an "impact bonus" in July 2008 for his "significant achievements and continuing focus on 'doing the right thing.'" Compl. Exs. B, C.

Tyco is a wholly-owned subsidiary of Tyco Electronics Ltd. ("Tyco Ltd."), a publicly traded Swiss corporation. Until 2007, Tyco Ltd. was a subsidiary of Tyco International, Ltd. ("Tyco International"). Tyco Ltd. was separated from Tyco International in the wake of a highly-publicized 2002 corporate scandal involving Tyco International's former CEO, Dennis Kozlowski, that resulted in Mr. Kozlowski's 2005 conviction for allegedly receiving $81 million in unauthorized bonuses. The last several years of Mr. Wiest's employment at Tyco were allegedly extremely stressful as a result of the Kozlowski scandal, pressure to reduce costs, and Mr. Wiest's personal medical issues.

Beginning in mid-2007, Mr. Wiest refused to process certain event expenditures that he

felt were improper because they did not meet reimbursement or payment standards set by the accounting department, violated rules and regulations promulgated by the Securities and Exchange Commission ("SEC") or tax laws and regulations, or otherwise raised ethical concerns. Among the expenses Mr. Wiest refused to process without further review of the proper tax or accounting treatment were expenses associated with two events that took place in mid-2008, one at the Atlantis Resort in the Bahamas ("the Atlantis event"), the other at the Venetian Resort in Las Vegas ("the Venetian event"). In both cases, Mr. Wiest sent email communications to his supervisors regarding the need for further tax or accounting analyses of the expenses, and, in the case of the Venetian event, formal approval by appropriate parties before the payments could be processed.[1] Plaintiff was particularly concerned because he felt that there were similarities between some of the expenses associated with the two events and the type of expenditures for which Mr. Kozlowski was eventually prosecuted.

After further review of the expenses associated with the Atlantis event, Tyco's tax department found that the event costs had been improperly categorized as business expenses, and instead would have to be treated as award income to the employees who attended the event. Tyco's management decided to go ahead with the event, treat the costs as award income to the attendees, and cover the resulting tax liability by "grossing up" the attendees' bonuses.[2] After receiving detailed information and a revised event agenda, the tax department concluded that the

---

[1] The expenses associated with the Atlantis event had already been approved by Defendant Thomas Lynch, Tyco's CEO, as required by Tyco's Delegation of Authority policy.

[2] To "gross up" an employee's bonus means to pay the employee "an additional amount of cash beyond the value of the [award income] in order to cover [the employee's] tax liability." Compl. ¶ 45.

Venetian event costs had been properly categorized as business expenses.

Mr. Wiest also refused to process the payment for expenses associated with an event held in late 2008 at the Wintergreen Resort in Virginia ("the Wintergreen event") because proper approval of the expenses by Defendant Lynch had not been obtained in accordance with the requirements set out in Tyco's Delegation of Authority policy. Defendant Terrence Curtin, Tyco's CFO, approved the expenses on Mr. Lynch's behalf via email, but failed to comply with Mr. Wiest's email request that he copy Mr. Lynch on the email so that Mr. Lynch would be aware that Mr. Curtin had approved the expenses in his absence. Mr. Wiest then emailed his own supervisor, Douglas Hofsass, reiterating the need to make Mr. Lynch aware of the expenses being approved. The payment was eventually processed, but Mr. Wiest never found out whether formal approval by Mr. Lynch had been obtained.

Apparently, Mr. Wiest continued to express his concerns regarding various other expenditures until September 2009, when he began to suspect that individuals on Tyco's management team were frustrated with his challenges to event expenditures, especially the head of the business unit that hosted the Atlantis, Venetian, and Wintergreen events, Defendant Charles Dougherty. Mr. Wiest alleges that his suspicion was bolstered when he noticed that his co-workers and supervisors were acting differently around him, and Susan Wallace of Tyco's human resources department called him in for a meeting on September 17, 2009. During the meeting, Ms. Wallace informed Mr. Wiest that she was initiating an investigation into allegations that he had (1) failed to properly report baseball tickets he had received from Mr. Hofsass in August 2009 as a vendor gift in violation of company policy; (2) made sexually suggestive comments to co-workers; and (3) engaged in an improper relationship with another Tyco

employee ten years earlier. Mr. Wiest questioned the seriousness of the allegations, but was not allowed to respond to the allegations during the meeting. He was also unable to receive any additional information from Mr. Hofsass.

On September 29, 2009, after inquiring about the status of the investigation, Mr. Wiest was told that "it was at a very serious stage." Compl. ¶ 78. The next morning, he was told that he should not bother with a scheduled performance review. As a result of the stress of the investigation, Mr. Wiest says he went home sick later that day, and went on medical leave until he was terminated seven months later, on April 1, 2010.

Mr. Wiest filed an administrative complaint with the Occupational Safety and Health Administration on November 24, 2009, alleging that the Defendants had violated 18 U.S.C. § 1514A by retaliating against him for engaging in protected activity. The Secretary of Labor made no final determination within 180 days of the date Mr. Wiest filed his administrative complaint. Mr. Wiest filed suit in federal court on July 7, 2010.[3]

**LEGAL STANDARDS**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted) (alteration in original) (quoting *Conley*, 355 U.S. at 47), the plaintiff

---

[3]*See* 18 U.S.C. § 1514A(b)(1)(B) (allowing a complainant to bring an action for *de novo* review in a federal district court if the Secretary of Labor fails to issue a final decision within 180 days of the date the administrative complaint was filed).

must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citation omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). The question is not whether the claimant will ultimately prevail but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation omitted). To survive a motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1323 (2011).

In ruling on a motion to dismiss, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Although the Court must accept as true all factual allegations in the complaint and view those facts and draw all reasonable inferences in the light most favorable to the non-moving party, *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010), the Court does not have to accept as true "unsupported conclusions and unwarranted inferences," *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (internal quotation marks and citation omitted), or the plaintiff's "bald assertions" or "legal conclusions," *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (internal quotation marks and citation omitted).

## Discussion

### I. SOX Retaliation Claim

Mr. Wiest alleges that the Defendants' investigation of the allegations of past misconduct

6

by him was a retaliatory unfavorable personnel action taken by them in response to his alleged protected activities of challenging certain payment requests and refusing to process the challenged requests. Mr. Wiest further alleges that the manner in which the investigation was conducted led to his constructive discharge on September 30, 2009.

Under SOX, a covered entity and its agents may not

> discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of any lawful act done by the employee –
>
> > (1) to provide information, cause information to be provided, or otherwise assist in an investigation regarding any conduct which the employee reasonably believes constitutes a violation of section 1341 [mail fraud], 1343 [wire fraud], 1344 [bank fraud], or 1348 [securities fraud], any rule or regulation of the Securities and Exchange Commission, or any provision of Federal law relating to fraud against shareholders, when the information or assistance is provided to or the investigation is conducted by –
> > . . . .
> > > (C) a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A.

In order to state a prima facie case under § 1514A, a plaintiff must allege that (1) he engaged in protected activity; (2) the defendants "knew or suspected, actually or constructively," that he had engaged in the protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action. 29 C.F.R. § 1980.104(b)(1)(i)-(iv) (2010). The Defendants argue that Mr. Wiest has failed to plead sufficient facts to establish any of the four required elements for a prima facie case.[4] Because the

---

[4] The Defendants also argue that Tyco is not covered by SOX because it is not a publicly traded corporation. Until 18 U.S.C. § 1514A was amended by Section 929A of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203,

Court concludes that Mr. Wiest has failed to plead sufficient facts to support a finding that he engaged in protected activity, the other three elements will not be discussed, and Mr. Wiest's SOX claim will be dismissed.

SOX protects an employee who has "provided information" to a supervisor regarding conduct that the employee "reasonably believes" violates one of the specific provisions enumerated in § 1514A. For a communication to be protected, it must "definitively and specifically" relate to one of the statutes or rules listed in § 1514A. *Platone v. FLYi, Inc.*, ARB No. 04-154, 2006 WL 3246910, at *8 (Dep't of Labor Sept. 29, 2006), *aff'd* 548 F.3d 322 (4th Cir. 2008); *accord Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996-97 (9th Cir. 2009); *Day v. Staples, Inc.*, 555 F.3d 42, 55 (1st Cir. 2009); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 (5th Cir. 2008). Although the employee does not have to cite a specific code provision or prove that a violation actually occurred, the employee's communication must express "an objectively reasonable belief there has been shareholder fraud." *Day*, 555 F.3d at 55. This requires that the employee's communication do more than merely allege that wrongdoing has occurred. Instead, the employee's communication must convey that his concern with any alleged misconduct is linked to "an objectively reasonable belief that the company intentionally misrepresented or

---

§ 929A, 124 Stat. 1376, 1852 (2010), Section 1514A was silent as to whether SOX's anti-retaliation provision applied to wholly-owned subsidiaries of publicly traded corporations. Section 929A of the Dodd-Frank Act amended Section 1514A to explicitly state that the section applied to "any subsidiary or affiliate whose financial information is included in the consolidated financial statements of [a publicly traded] company." Dodd-Frank Act § 929A, 124 Stat. at 1852. However, Section 929A did not become effective until July 22, 2010, after the complaint in this action was filed. Mr. Wiest argues that Section 929A should apply retroactively, or in the alternative, that the individual Defendants were acting as agents of Tyco's publicly traded parent corporation, Tyco Ltd. Because the Court is deciding the motion to dismiss on other grounds, it is not necessary to address the parties' arguments regarding retroactivity or agency.

omitted certain facts to investors, which were material and which risked loss." *Id.*; *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (noting that "allegations of GAAP violations or accounting irregularities" need to be "coupled with evidence of 'corresponding fraudulent intent'" before stating a securities fraud claim). Furthermore, to constitute protected activity, the plaintiff's communication must provide information that reflects a reasonable belief of an existing violation. *See Livingston v. Wyeth*, 520 F.3d 344, 352 (4th Cir. 2008) ("We [have] rejected the claim . . . that a reasonable belief that a violation has occurred or is in progress can include a belief that a violation is about to happen upon some future contingency.").

In order to determine whether an employee made a protected communication, a court must look to what the employee actually communicated to the employer at the time the alleged SOX violation occurred. *See Platone*, 2006 WL 3246910, at *8. Mr. Wiest has attached to his complaint emails that he sent to his supervisors in connection with four events in which he expressed his concerns regarding the tax or accounting treatment and approval process for associated costs. In deciding whether Mr. Wiest has sufficiently pleaded that he engaged in protected activity, the Court will consider whether the content of the emails, which are the only communications alleged in the complaint, interpreted in the light most favorable to him, gives rise to a reasonable inference that he provided information to his supervisors that "definitively and specifically" conveyed his "objectively reasonable" belief that conduct constituting shareholder fraud had either taken place or was in progress.

9

**1. June 3, 2008 Email**

On June 3, 2008, Defendant Lynch allegedly approved an expenditure of approximately $350,000 in connection with the Atlantis event. *See* Compl. Ex. G. The same day, Mr. Wiest sent his supervisor, Mr. Hofsass, an email addressing Mr. Wiest's concerns regarding the proper tax and accounting treatment of the approved expenses. The body of the email is quoted here in full:

> Doug,
> In order to be sure all costs associated with the referenced event are recorded properly and therefore also treated correctly for tax purposes, we want to be sure the following areas are reviewed and addressed (perhaps by the relevant tax department resources):
> - As submitted, the costs are charged entirely to advertising expense, which seems inappropriate and does not address the issue of breaking out the meals and entertainment portions which we feel would fall into the 50% deductibility classification for tax purposes.
> - There appears to be over 40 spouses/guests attending and the applicable costs (i.e. meals, entertainment, etc.) need to be separately detailed so they can be recorded as income to the employees attending this event.
> - The business purpose for the event must be clearly stated.
> - The expenses should be reviewed for potential disallowance by a taxing authority based on excessive/extravagant spend levels (for example room rates range from $475 to $1095 per night and several of the items detailed on the listing of entertainment expenses may also raise issues).

Compl. Ex. E. Mr. Wiest also provided Mr. Hofsass with a copy of the detailed invoice for the event, adding a list he prepared of "Select Bahama Events That Could Be Considered Extravagant." Compl. Ex. I. On its face, the list did not contain any information that would give rise to a reasonable inference that Mr. Wiest was asserting any fraudulent activity had occurred or was ongoing or that he was suspicious in such regard. Instead, it simply sets forth the items and how much each item cost. Mr. Wiest's email was forwarded to Marc Vestal of the Tyco tax department, who apparently agreed to review any tax issues. Compl. Ex. J. Except for an email

sent to Mr. Vestal with a link to a web page containing information about the Atlantis event, *see id.*, Mr. Wiest has not referenced in his complaint any other emails that he sent concerning the Atlantis event. Likewise, he has not alleged that he sent additional emails or had additional discussions with his supervisors about his concerns regarding proper accounting and tax treatment.

The Court cannot describe Mr. Wiest's communications as providing information "definitively and specifically" conveying a reasonable belief that conduct constituting shareholder fraud had either taken place or was in progress. The email he sent Mr. Hofsass does not suggest that Mr. Wiest suspected that a decision not to conduct further tax review of the expenses had been made intentionally. *Cf. Allen*, 514 F.3d at 480 ("Mere negligence on the part of the employer does not constitute a violation of federal law relating to fraud against shareholders."). A fair reading of Mr. Wiest's email demonstrates that he only recommends that the tax department review the areas listed in the email. Based on Mr. Wiest's attached exhibits, it appears that his advice was indeed followed. Nothing in the email would allow the Court to draw a reasonable inference that Mr. Wiest's concern about proper tax and accounting treatment was connected in any way to a concern about shareholder fraud, as required for a showing that Mr. Wiest had engaged in activity protected under § 1514A. *Cf. Vannoy v. Celanese Corp.*, ALJ No. 2008-SOX-00064, 2009 WL 6496753, at *13 (Dep't of Labor June 24, 2009) ("SOX does not apply to generic allegations of accounting violations, violations of GAAP, violations of IRS regulations or general allegations of fraud that are not definitive and specific."). Furthermore, Mr. Wiest's email does not support a reasonable inference that he was expressing a belief that any type of fraudulent behavior in violation of SOX had occurred or was in progress. *Cf.*

11

*Livingston*, 520 F.3d at 322 (stating that the language in § 1514A requires an employee to provide information about conduct the employee reasonably believes constitutes "an *existing* violation, inasmuch as the violation requirement is stated in the present tense"). Mr. Wiest's communications simply provided information and suggestions to ensure proper tax and accounting treatment of the Atlantis event expenses. As such, then, they did not rise to the level of "definitively and specifically" conveying a reasonable belief that a violation of the laws and regulations listed in § 1514A was taking place, notwithstanding Mr. Wiest's conclusory assertion in the complaint that he had made "protected disclosures relating to fraudulent accounting practice, attempted shareholder fraud, and lack of compliance with United States Generally Accepted Accounting Principles ('GAAP')." Compl. ¶ 2.

Mr. Wiest also alleges that he engaged in protected activity in connection with the Atlantis event when he refused to process the payment for the event. However, Mr. Wiest has failed to plead any factual allegations supporting a reasonable inference that his refusal to act "provided information" about a potential SOX violation. The Administrative Review Board of the Department of Labor has held that a refusal to act without any explanation generally does not "provide information" about a potential SOX violation. *See Henrich v. Ecolab, Inc.*, ARB No. 05-030, 2006 WL 6583249, at *8 (Dep't of Labor June 29, 2006) ("Where a complainant refuses to act but does not relate such refusal to a concern about potential fraud or another possible SOX violation, such refusal does not necessarily 'provide information' about a SOX violation."); *Getman v. Sw. Sec., Inc.*, ARB No. 04-059, 2005 WL 4888992 (Dep't of Labor July 29, 2005) (holding that a stock analyst's refusal to change a stock rating was insufficient to "provide information" regarding a potential SOX violation). Here, even assuming that Mr. Wiest's

12

supervisors were aware that he was refusing to process the payment unless the Tyco tax department reviewed the Atlantis expenses (despite his failure to explicitly say so), Mr. Wiest has not alleged that he explained to his supervisors that his refusal to process the Atlantis payment absent a determination of the proper tax and accounting treatment was related to a concern regarding potential fraud on the shareholders.

Mr. Wiest further alleges that the tax department's review resulted in a finding that "processing the transaction as submitted to [Mr. Wiest's] function for payment would have resulted in a misstatement of accounting records and a fraudulent tax deduction since it was being submitted as a business expense but clearly did not qualify as such." Compl. ¶ 35. However, the relevant inquiry in determining whether Mr. Wiest engaged in protected activity is what he had communicated to his supervisors *at the time* the alleged misconduct took place, *Platone*, 2006 WL 32469210, at *8. Focusing on the text of the email, Mr. Wiest did not identify, describe or suggest that the questioned expenses were potentially fraudulent.

Finally, Mr. Wiest alleges that after the tax department review resulted in the costs of the Atlantis event being treated as award income to the attending employees, the Defendants then improperly "grossed up" the attendees' bonuses to cover the employees' tax liability, a practice which Mr. Wiest is at pains to point out that the prosecutor in the Kozlowski case had found to be an unacceptable means of "avoid[ing] taxes when there is no benefit to the company." Compl. ¶ 45. However, although Mr. Wiest has attached emails that were forwarded to him containing the calculations for grossing up the bonuses, *see* Compl. Exs. K, L, he has *not* alleged that he reported his concerns about the impropriety of grossing up the bonuses to anyone at the time that the bonuses were being calculated or awarded. Thus, Mr. Wiest's allegation regarding

his concern over the grossed up bonuses also fails to support a finding that he engaged in protected activity within the meaning of § 1514A.

The Court concludes that Mr. Wiest has failed to make a sufficient factual showing to support a reasonable inference that either his email communications relating to the Atlantis event expenses or his refusal to process the subject payment constituted protected activity under § 1514A.

### 2. June 10-13, 2008 Emails

Mr. Wiest alleges that he also engaged in protected activity in connection with the Venetian event, which had an associated cost of $218,000. On June 10, 2008, Catherine Smith, who worked in Mr. Wiest's department, sent the following email to Kevin Donaruma[5] (presumably on Mr. Wiest's behalf):

> Kevin,
> As a follow up to our conversation yesterday, the outline below identifies the information needed prior to the release of payment for this event. I did receive a call from Jackie Horsley this morning indicating that she would do everything possible to obtain the agenda and attendee information we discussed. Once that information is gathered, the breakdown of the accounting charges will need to be completed to more accurately state the activity of the event. Finally we will also need the appropriate approval for this item according to [Tyco's Delegation of Authority policy]. CEO approval is required for [travel and entertainment expenses] greater than or equal to $100K.
>
> Thank you for your support in obtaining this information.
> Cathy
> _____
> M/Acom Global Business Meeting - Las Vegas
> • Detailed Agenda/Business Purpose (for the entire week)
> • List of Attendees including Title and Business Affiliation (the list attached does not include [Tyco] employees)

---

[5]The Court is unable to determine from the Complaint what position Mr. Donaruma held at Tyco.

- • Correct accounting treatment (Ive [sic] attached a copy of the original invoice)
  - • Lodging
  - • Business Conference Meals
  - • Entertainment
  - • Business Conference Others
- • Approval according to [Tyco's Delegation of Authority policy] (CEO) (Final Requirement)

Compl. Ex. M.  In response to the email, Mr. Donaruma sent Ms. Smith the information and cost breakdown requested, and the Tyco tax department concluded after receiving a revised agenda that the costs associated with the Venetian event were properly classified as business expenses. At Mr. Wiest's request, Ms. Smith forwarded the relevant emails to James Robinson,[6] who agreed that the information provided justified treating the expenditure as a business expense, and payment was released.

Mr. Wiest alleges that his refusal to process the Venetian payment and email communications insisting on proper tax analysis and compliance with Tyco's approval process constituted protected activity.  For the reasons discussed above, none of these communications or Mr. Wiest's refusal to process payment in this instance "definitively and specifically" alerted the Defendants to alleged SOX violations[7]

### 3. October 10, 2008 Emails

Mr. Wiest also alleges that in October 2008, he refused to process the payment for the Wintergreen event, which cost $355,000, pending approval by Mr. Lynch, pursuant to Tyco's

---

[6] The Court is unable to determine from the Complaint what position Mr. Robinson held at Tyco.

[7] The Court also notes that as with the Atlantis event emails regarding the need for further tax review, Mr. Wiest's advice apparently was again followed.

Delegation of Authority policy which required CEO approval for any expenditures over $100,000.  On October 8, 2008, Kevin Kelleher, the Director of Accounting for the Tyco Wireless Solutions unit, sent an email to Mr. Dougherty, head of the Wireless Solutions unit, advising him of the need to get express approval from Mr. Lynch before Mr. Wiest's accounts payable department would release a $100,000 down payment for the event.  On October 10, 2008, Mr. Dougherty emailed Mr. Curtin, asking for his and Mr. Lynch's approval of the $100,000 down payment as well as the rest of the costs associated with the event.  Mr. Curtin emailed his approval to Mr. Dougherty and Mr. Kelleher.  Mr. Wiest was not included in the email chain until Mr. Kelleher forwarded him a copy of Mr. Curtin's approval email (and the rest of the email chain) later that same day.  Upon receiving the copy of Mr. Curtin's email, which merely read "approved," Mr. Wiest sent Mr. Curtin the following email:

> Terrence,
> Just for the sake of clarity (given that Chuck [Dougherty]'s note only referenced the $100k [down payment]), please confirm you are approving the entire cost of the event which is $355k for the facility, entertainment and meals for Tom [Lynch] in his absence (please copy him on your response to close the loop).  Thanks.

Compl. Ex. N.  Mr. Curtin responded that he was "approving the entire cost," but failed to copy Mr. Lynch in his response.  Mr. Wiest claims he was concerned because pursuant to company policy, Mr. Curtin could only approve payments up to $100,000.  After receiving Mr. Curtin's response, Mr. Wiest sent the following email to his own supervisor, Mr. Hofsass:

> Doug,
> In the interest of full disclosure I still feel Tom Lynch should be informed about this transaction since Terrence is approving on his behalf (Terrence can only approve up to $100k for [travel and entertainment] events per [Tyco's Delegation of Authority policy]) and Tom was not copied.  I will leave it to your discretion as to how any communication of that nature should occur.

16

*Id*. Mr. Wiest alleges that the failure to follow "established internal control procedures for approvals" was a SOX violation, and thus his email insisting that Mr. Lynch be informed about the approval constituted protected activity. Compl. ¶ 52.

After considering the content of the October 10, 2008 emails, the Court once again concludes that these cannot be reasonably interpreted as protected communications under § 1514A. Although the emails demonstrate Mr. Wiest's concern with following internal expense approval procedures, they do not convey "definitively and specifically" to his supervisors that a failure to follow internal procedures would implicate shareholder fraud or constitute a SOX violation, and "raising a complaint about a violation of an internal policy is not considered protected activity." *Marshall v. Northrop Grumman Synoptics*, ALJ No. 2005-SOX-0008, 2005 WL 4889013, at *3-4 (Dep't of Labor June 22, 2005).

### 4. November 15, 2007 Email[8]

Mr. Wiest sent an email on November 15, 2007 in connection with "a case of what appeared to be clear expense fraud." Compl. ¶ 56. He alleges that a "key employee" perpetrated the fraud, which involved reporting undocumented expenses as business expenses, making duplicative expense entries, and improperly reporting hotel room expenses. *Id*. Mr. Wiest sent the following email to his supervisors and to the investigator assigned to the alleged expense fraud case:[9]

---

[8]Although this email communication occurred before the other email communications discussed above, the Court is discussing the allegations in the sequence set forth in the complaint.

[9]Unfortunately, the text of the email Mr. Wiest was responding to seems to have been deleted, so the quoted text is rather cryptic. It appears that Mr. Wiest is responding to an email from the investigator.

17

> I assume this means that there was also no requested reimbursement to Tyco for the documented issues.  It should be noted that this would result in invalid/undocumented business expenses in an IRS audit (which would then be extrapolated in determining any tax liability) if there is no reimbursement or if the amount is not reported as income on his W2.

Compl. Ex. O.  According to the complaint, Mr. Wiest sent this email to explain "that the undocumented charges would need to be reported as income to the employee, reimbursed to the company, or not claimed for tax purposes."  Compl. ¶ 56.

This email also does not constitute protected communication under § 1514A.  The email simply provides information about the potential tax consequences of failing to obtain reimbursement from the alleged perpetrator of the fraud.  The communication does not link Mr. Wiest's concerns regarding proper tax treatment to any concern about shareholder fraud, *see Vannoy*, 2009 WL 6496753, at *13 (holding that "generic allegations" of improper accounting or noncompliance with tax laws are not protected under SOX).  It also fails to communicate a reasonable belief that there was an *existing* violation of SOX.  S*ee Livingston*, 520 F.3d at 322 (stating that expressing a concern that "a violation is about to happen upon some future contingency" is not protected activity under SOX).  Like the other emails, this communication cannot be reasonably interpreted to "definitively and specifically" provide information about conduct that Mr. Wiest reasonably believed constituted an existing SOX violation, and thus does not provide support for a finding that Mr. Wiest engaged in protected activity by sending this email.  Mr. Wiest also does not allege that he made any other communications to his supervisors in connection with this issue that "definitively and specifically" conveyed a reasonable belief that there was an existing SOX violation.

For the foregoing reasons, the Court concludes that Mr. Wiest has failed to allege

sufficient facts that would permit a reasonable inference that he engaged in protected activity within the meaning of § 1514A.  Thus, he has failed to state a cause of action under SOX.  Because Mr. Wiest has not alleged specific facts suggesting that additional communications were made,[10]  amendment of the complaint may well be futile.  Nonetheless, the Court will extend to the Plaintiffs the opportunity to try to amend the complaint rather than to dismiss the complaint with prejudice at this time.

## II. State law Claims

In addition to Mr. Wiest's federal SOX claim, Mr. and Mrs. Wiest have asserted state law claims of intentional infliction of emotional distress, wrongful termination, and loss of consortium.  Absent an independent source of federal subject matter jurisdiction, the Court declines to exercise supplemental jurisdiction over the state law claims.  *See Osborn v. Haley*, 549 U.S. 225, 245 (2007).  Thus, the Wiests' state law claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Joint Motion to Dismiss is granted.  The complaint is dismissed in its entirety as to all Defendants.

---

[10]Mr. Wiest does allege that he engaged in other protected activity by raising concerns about the accounting and tax treatment of expenses associated with other corporate management events that took place between late 2007 and September 2009, including a holiday party, an internal audit department meeting, and a baby shower.  Mr. Wiest alleges that he had to try several times before receiving confirmation from the vice president of the tax department that the expenses were appropriately treated as business expenses.  However, Mr. Wiest has alleged no specific facts about these communications, and the limited facts that are pleaded are insufficient to plausibly allege that he engaged in protected activity.

An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE