**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **JEFFREY A. WIEST &** | : | |
| **LAURA E. WIEST, h/w,** | : | **CIVIL ACTION** |
| *Plaintiffs*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **THOMAS J. LYNCH et al.,** | : | **No. 10-3288** |
| *Defendants*. | : | |


**M E M O R A N D U M   O P I N I O N**

PRATTER, J.                                                                                       APRIL 15, 2013

Jeffrey Wiest has sued Tyco Electronics Corporation ("Tyco") and four individual

Defendants under the whistleblower protection provision of the Sarbanes-Oxley Act, section

806, 18 U.S.C. § 1514A, for retaliating against him for his intracompany reports of suspected

fraud and violations of federal tax law. The Defendants together filed a Motion to Dismiss

(Docket No. 35), which the Court now grants in part and denies in part.[1]


## I.      FACTUAL AND PROCEDURAL BACKGROUND

In the course of an earlier iteration of this dispute, the Third Circuit Court of Appeals

canvassed the factual background of the case as follows:

> According to the Complaint, Wiest worked for approximately thirty-one years
> in Tyco's accounting department until his termination in April 2010. For Wiest's
> last ten years of employment, his office was under a high level of audit scrutiny
> due to the well-known corporate scandal involving its former parent company,
> Tyco International, and its CEO, Dennis Kozlowski. Around 2007, Wiest
> established a pattern of rejecting and questioning expenses that failed to satisfy
> accounting standards or securities and tax laws. . . .

---

[1] Mr. Wiest brings two other counts under state law and his wife one. *See infra* notes 5, 16.

In mid-2008, Wiest refused to process a payment and sent an email to his supervisor regarding an event that Tyco intended to hold at the Atlantis Resort in the Bahamas, which was similar to a corporate party under Kozlowski's management that had drawn significant criticism. Expenses for the $350,000 Atlantis event included "Mermaid Greeters" and "Costumed Pirates/Wenches" at a cost of $3,000; a "Tattoo Artist (includes tattoos)" and "Limbo" and "Fire" at a cost of $2,350; chair decorations at a cost of $2,500; and hotel room rentals ranging from $475 to $1,000 per night. In an email to his supervisor, Wiest expressed his belief that the costs were inappropriately charged entirely as advertising expenses. He asserted that the costs needed to be detailed and charged as income to attending employees because the employees were bringing guests, and the expenses needed to "be reviewed for potential disallowance by a taxing authority based on excessive/extravagant spend [sic] levels." Following Wiest's email, Tyco's management determined that the five-day event included only a single one-and-one-half hour business meeting. As a result, they determined that processing the payment "would have resulted in a misstatement of accounting records and a fraudulent tax deduction," and that Tyco needed to treat the event as income for attending employees. Tyco decided to proceed with the event and to compensate the attendees for the additional tax liability by increasing (i.e., "grossing-up") their bonuses. . . .

In late 2008, Wiest was presented with a request for approval of a conference at the Wintergreen Resort in Virginia in the amount of $335,000. . . . [T]he Wintergreen expense request lacked both sufficient documentation and proper approval from Tyco's CEO. Wiest emailed his supervisor, explaining that he believed Tyco's internal policies required that the CEO be notified about the transaction. To the best of Wiest's knowledge, Tyco processed the payment without the CEO's approval, in violation of Tyco's internal policies.

*Wiest v. Lynch*, 710 F.3d 121, 124-25 (3d Cir. 2013) (internal quotation marks and citations omitted). Mr. Wiest also reported a number of concerns about other events, including, for instance, his doubts about the propriety of approving certain items for a "Venetian Resort Event," as well as his reservations about other allegedly lavish parties and expenditures. *See id.*

Upon the Defendants' first Motion to Dismiss (Docket No. 5), this Court held that Mr. Wiest had not established a prima facie case for retaliation under section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, because he could not show, under the standard announced by the United States Department of Labor in *Platone v. FLYI, Inc.*, ARB No. 04-154, 2006 WL 3246910 (Dep't of Labor Sept. 29, 2006), *aff'd*, 548 F.3d 322 (4th Cir. 2008), that his

communications were activities protected from retaliation because his reports of Tyco and its

agents' misconduct did not "definitively and specifically" relate to violations of statutes or rules

listed in section 806. On appeal, the Third Circuit Court of Appeals, observing that in *Sylvester v.*

*Parexel International LLC*, ARB No. 07-123, 2011 WL 2165854 (Dep't of Labor May 25, 2011)

(en banc), "however, the [Administrative Review Board ('ARB') of the Department of Labor[2]]

abandoned the 'definitive and specific' standard announced in *Platone*" in favor of a "reasonable

belief" standard entitled to *Chevron* deference,[3] reversed. *Wiest*, 710 F.3d at 129-32.[4] Turning to

---

[2] "The Administrative Review Board of the Department of Labor serves the same function relative to an ALJ [(administrative law judge)] as the Court of Appeals does to a district judge in the federal Article III court system." *Rao v. Daimler Chrysler Corp.*, No. 06-13723, 2007 WL 1424220, at *5 n.5 (E.D. Mich. May 14, 2007).

[3] *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984).

[4] There is good reason to question whether the ARB's "jettison[ing of *Platone*'s] requirement that SOX whistleblowers definitively and specifically tie . . . their disclosures to the kinds of fraud listed in § 806" in favor of *Sylvester*'s subsequent "reasonable belief" standard is due no *Chevron* deference, and that the ARB's initial position, "which was adopted by several courts of appeals," was correct. *Wiest*, 710 F.3d at 139-40 (Jordan, J., dissenting); *see id.* at 139 n.3. As Judge Jordan pointed out in his dissent in this case,

> I cannot agree with [the majority's] generous characterization of the ARB's work product. *Sylvester*'s rejection of *Platone* is hardly explained and far from persuasive. It is strange, for example, to hear the ARB claim that the greater specificity of § 806 makes the "definitive and specific" standard inappropriate but then hear it say in the next breath that one need not bother with alleging, proving, or even approximating a statement showing that the specifics of § 806 have been satisfied.

*Id.* at 141. (footnote omitted). "[G]eneral allegations of misconduct by corporate officers, even if that misconduct relates to financial matters"—such as violations of general accounting principles—"are not sufficient to state a § 806 claim." *Id.* at 139.

> *Chevron* deference extends only to reasonable agency interpretations of ambiguous statutory language. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous . . . , the question for the court is whether the agency's answer is based on a permissible construction of the statute."). For several reasons, including those discussed herein, I question whether the ARB's interpretation of the requirements of a § 806 claim, as expressed in *Sylvester*, represents a reasonable and thus permissible construction of the statute.

apply *Sylvester*'s "reasonable belief" standard, the Court of Appeals concluded that Mr. Wiest had adequately pleaded protected activity under section 806 with his reports regarding the Atlantis and Wintergreen Resort Events, but affirmed this Court's dismissal of his claims based on other reports, including that relating to the Venetian Resort Event, because he did not have a "reasonable belief" that Tyco's conduct relevant thereto constituted a violation of a provision enumerated in section 806. *See id.* at 135-38. The Court of Appeals then remanded the case "for further proceedings consistent with [its] opinion." *Id.* at 138.

Now before this Court on remand, the Defendants have filed a renewed Motion to Dismiss on four different grounds, each of which, they contend, warrants dismissal of Mr. Wiest's section 806 claim (and therefore the Court's relinquishment of supplemental jurisdiction over the Wiests' state law claims).[5] The Defendants argue that (1) Mr. Wiest did not suffer an adverse employment action; (2) Mr. Wiest has not pleaded a sufficient causal connection between the alleged protected activity and any adverse employment action; (3) the Complaint's allegations are not sufficiently specific as against the four individual Defendants; and (4) in any event, section 806 of Sarbanes-Oxley did not, at the time of the events alleged in the Complaint, provide coverage to employees, like Mr. Wiest, of non–publicly traded subsidiaries of publicly held companies. And, Defendants point out, Tyco is a non–publicly traded subsidiary of Tyco

---

*Wiest*, 710 F.3d at 141 n.5 (Jordan, J., dissenting).

[5] Mr. Wiest also brings two state law claims (intentional infliction of emotional distress and wrongful termination) and his wife, Laura Wiest, brings one (loss of consortium). Because it reversed this Court's dismissal of Mr. Wiest's section 806 claim on the limited grounds that this Court applied the "definitive and specific" standard instead of the "reasonable belief" standard, and that, under the "reasonable belief" standard, two of Mr. Wiest's reports constituted protected activity, the Court of Appeals reinstated Mr. Wiest's Complaint and therefore also vacated this "Court's decision to decline to exercise supplemental jurisdiction." *Wiest*, 710 F.3d at 138 n.7. In their second, current Motion to Dismiss, the Defendants do not move to dismiss the state law claims, but aim for the same result by contending that if the Court dismisses Mr. Wiest's section 806 claim, it should also, therefore, decline to exercise supplemental jurisdiction over the Wiests' state law claims.

Electronics Ltd. ("Tyco Limited") (which, the Defendants do not dispute, is allegedly covered by section 806 of Sarbanes-Oxley, but which Mr. Wiest has not named as a Defendant).[6]

After the parties notified the Court that the Supreme Court had granted a writ of certiorari in *Lawson v. FMR LLC*, 134 S. Ct. 1158 (2014)—the potential applicability of which case the parties continue to contest—"to resolve the division of opinion on whether [18 U.S.C.] § 1514A extends whistleblower protection to employees of privately held contractors who perform work for public companies," *id.* at 1165, this Court placed the instant case in suspense pending the Supreme Court's decision. After the Supreme Court announced that decision, this Court ordered supplemental briefing on three issues, *see* Mar. 11, 2014 Order (Docket No. 47):

> 1. The impact, if any, of *Lawson* on the issue of whether pre–Dodd-Frank section 806 of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, protects employees of privately held subsidiaries of public companies (and/or whether the Dodd-Frank amendment applies retroactively);

---

[6] Before Dodd-Frank, the relevant portion of section 806 provided that

> [n]o company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)), or any officer, employee, contractor, subcontractor, or agent of such company, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of

the employee's protected activity. 18 U.S.C. § 1514A(a) (2010). Section 806, as amended by Dodd-Frank, now provides that

> [n]o company with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)) *including any subsidiary or affiliate whose financial information is included in the consolidated financial statements of such company*, or nationally recognized statistical rating organization (as defined in section 3(a) of the Securities Exchange Act of 1934 (15 U.S.C. 78c), or any officer, employee, contractor, subcontractor, or agent of such company or nationally recognized statistical rating organization, may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment because of

the employee's protected activity. 18 U.S.C. § 1514A(a) (emphasis added).

2.      Whether, and if so, how, the *text* of pre–Dodd-Frank § 1514A is in fact ambiguous for purposes of both *Chevron* deference and retroactivity analysis;[7] *and*

3.      Whether Mr. Wiest alleged an adverse employment action (and, specifically, constructive discharge).[8]

The parties' earlier briefing had suggested that the first or second issue could be dispositive because the events Mr. Wiest complains of occurred before Dodd-Frank amended section 806.

---

[7] [Footnote 1 from March 11, 2014 Order.] The Court notes that the parties have touched upon, but not fully confronted, this issue in their earlier briefing. The analysis of the court in *Mart v. Gozdecki, Del Giudice, Americus & Farkas LLP*, 910 F. Supp. 2d 1085 (N.D. Ill. 2012), seems compelling. "Where the statute's language is unambiguous, the sole function of the courts is to enforce it according to its terms. Here, the language of SOX is clear. Section 806 clearly restricts its protections to employees of public companies, and not private companies." *Id.* at 1090 (citation omitted); *cf. Lawson*, 2014 WL 813701, at *9 n.11 ("We have no occasion to determine whether the ARB would be entitled to deference in this regard, for . . . we find that the statutory text unambiguously affords protection to personal employees of public company officers and employees. § 1514A(a).").

The Wiests, citing the Department of Labor's Administrative Review Board's decision in *Johnson v. Siemens Building Technologies, Inc.*, No. 08-032, 2011 WL 1431986, at *8 n.10 (Dep't of Labor ARB Mar. 31, 2011), argue that "a review of decisions by ALJs, who were confronted with this issue pre-amendment, makes clear SOX 806's ambiguity." Plfs. Mem. Opp. 25 (Docket No. 39). But as the *Mart* court pointed out, *Johnson* failed to "interpret[ the] actual language of the statute or discuss why [the ARB] conclude[d that] section 806's plain language is ambiguous." *Mart*, 910 F. Supp. 2d at 1094. Further, the weight of case law holds that pre–Dodd-Frank section 806 does not protect employees of privately held subsidiaries, and before *Johnson*,

> even where ALJs determined that section 806 extends its protection to employees of subsidiaries, they have found that section 806 extends protection where the subsidiary and parent were an "integrated enterprise," the subsidiary and parent are a "single employer," or where the subsidiary was merely an agent of the parent company.

*Mart*, 910 F. Supp. 2d at 1094.

[8] [Footnote 2 from March 11, 2014 Order.] In particular, the Court notes that the Wiests cited no case law on the issue of whether Mr. Wiest suffered an adverse employment action. They should cite and discuss authorities, both controlling and persuasive, to support their ostensible position that Mr. Wiest was constructively discharged.

The parties submitted their supplemental briefing on April 4, 2014, and the Court, having

removed the case from suspense (Docket No. 50) now decides the Motion to Dismiss.


## II. STANDARDS OF REVIEW

Before turning to the familiar standard to be applied at the motion to dismiss stage, the

Court addresses Mr. Wiest's argument that the Defendants are barred from filing their renewed

Motion to Dismiss because the Third Circuit Court of Appeals decided that he had cognizable

claims and that that ruling constitutes the law of this case.


### A. The Defendants' Second Motion to Dismiss Is Not Barred by the Law of the Case Doctrine

Mr. Wiest, contending that "[t]he Third Circuit [Court of Appeals] applied a plenary

standard in reviewing the dismissal of [his] Complaint," argues that the Court of Appeals held, as

the law of the case, that he "stated cognizable claims with regard to the Atlantis and Wintergreen

Resort Events," such that Defendants' instant Motion to Dismiss must be denied without further

analysis. Mem. Opp. 2-3 (Docket No. 39). To support this position, he points to the following

statement in the Court of Appeals' opinion: "Although we hold that the District Court applied the

wrong legal standard in analyzing Wiest's claims under Section 806, dismissal is still appropriate

if Wiest nevertheless failed to plead sufficient facts to state a claim." *Wiest*, 710 F.3d at 134-35.

The negative implication of this statement, Mr. Wiest suggests, is that because the Court of

Appeals did not "nevertheless" dismiss his claims, he must not have "failed to plead sufficient

facts to state a claim." *See* Mem. Opp. 2. But the *Wiest* panel's words carry no such suggestion.

Mr. Wiest's reading of the Court of Appeals' opinion not only ignores the context of this and

other statements, but it is also based on a mistaken notion of what exactly it is that appellate courts do, and what the "law of the case" doctrine entails.

"The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979) (citing *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 256 (1895)). When a higher court remands a case, the lower court "may consider and decide any matters left open by the mandate of [the higher] court." *Id.* (quoting *Sanford Fork & Tool Co.*, 160 U.S. at 256). And certainly, when the higher court is "not presented with [a given] question," and remand is ordered "for further proceedings consistent with [the higher court's] opinion," the law of the case doctrine cannot be said to apply to the resolution of that unaddressed issue. *Id.* "While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues," *id.* (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)), and "[t]he opinion delivered by [the higher] court at the time of rendering its decree may be consulted to ascertain what was intended by its mandate," *Sanford Fork & Tool Co.*, 160 U.S. at 256.

The Third Circuit Court of Appeals, elaborating the role and scope of the law of the case doctrine, has explained that the doctrine "preclude[s] review of only those legal issues that the court in a prior appeal actually decided, either expressly or by implication; it does not apply to dicta." *In re City of Phila. Litig.*, 158 F.3d 711, 718 (3d Cir. 1998). The doctrine applies "when [a court's] prior decisions in an ongoing case either expressly resolved an issue or *necessarily resolved it by implication*." *United Artists Theatre Circuit, Inc. v. Township of Warrington*, 316 F.3d 392, 397-98 (3d Cir. 2003) (quoting *Aramony v. United Way of Am.,* 254 F.3d 403, 410 (2d Cir. 2001)). "The doctrine does not bar litigation 'of all questions which were within the issues of the case and which, therefore, might have been decided.'" *Field v. Mans*, 157 F.3d 35, 40 (1st

Cir. 1998) (quoting *Conkling v. Turner*, 138 F.3d 577, 587 (5th Cir. 1998) (internal quotation marks and citations omitted)). Thus, even if a court issued a prior decision in a case, if it did not address the particular issue, *e.g.*, *Schultz v. Onan Corp.*, 737 F.2d 339, 345 (3d Cir. 1984), or if it addressed subissues but not the respective ultimate issue, *e.g.*, *Arroyo v. Astrue*, 347 F. App'x 802, 804 (3d Cir. 2009), the law of the case doctrine is inapplicable.

Moreover, general statements alone, even that a plaintiff has a cause of action, are insufficient to imply that all related issues or subissues have been decided. *E.g.*, *Westside Mothers v. Olszewski*, 454 F.3d 532, 539 (6th Cir. 2006) ("'Because the [prior] holding refers generally to the 'screening and treatment provisions,' . . . [t]here is . . . no assurance that the panel considered whether the specified provisions of the Medicaid Act confer enforceable rights under § 1983 before holding that the plaintiffs have a cause of action under § 1983. . . ." (citing *United Artists Theatre Circuit*, 316 F.3d at 398)); *see also, e.g.*, *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 988 F.2d 414, 430 (3d Cir. 1993) ("[T]he first district judge granted summary judgment . . . on the bottlers' Lanham Act claims because there was neither likelihood of confusion nor evidence that the Company diluted the trademark by marketing the other Coke products. The other language concerning the unamended bottlers' rights in the trademark and how they affect the unamended bottlers' contract claim is dicta which cannot be the predicate for a ruling that the doctrine of law of the case was violated." (citation omitted)). "Where there is substantial doubt as to whether a prior panel actually decided an issue, the [court] should not be foreclosed from considering the issue." *United Artists Theatre Circuit*, 316 F.3d at 398.

Mr. Wiest's argument that on appeal the Third Circuit Court of Appeals "found that [Mr. Wiest] stated cognizable claims with regard to the Atlantis and Wintergreen Resort Events," such

that "[t]hese issues are now completely [and] permanently settled" as "the law of the case," Mem. Opp. 3, is a strained, disconnected, and altogether unsupportable reading of the Court of Appeals' opinion. Mr. Wiest appears to rest his case on the Court of Appeals' statement that "[a]lthough we hold that the District Court applied the wrong legal standard in analyzing Wiest's claims under Section 806, dismissal is still appropriate if Wiest nevertheless failed to plead sufficient facts to state a claim." *Wiest*, 710 F.3d at 134-35. That statement of law—of a legal standard, as it were—refers to what an appellate court *can* do, not what it *does* in fact do in a given case, or what it did here. *See id.* ("We may affirm the district court on any ground supported by the record." quoting, in a parenthetical, *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)). The law of the case doctrine does not bar consideration of issues that could have been, but were not, decided; "[a]s compared to claim preclusion, it is not enough that the matter could have been decided in earlier proceedings." 18B Charles Alan Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 4478 (2d ed. 2013). And it is evident from the Court of Appeals' *Wiest* opinion that the *only* two issues the Court of Appeals decided were (1) what legal standard applies for determining whether an employee blew the whistle under section 806 ("reasonable belief") and (2) whether, under that standard, Mr. Wiest actually blew his whistle.[9] The Court of Appeals focused first on this Court's grounds for dismissing Mr. Wiest's Complaint—"the 'protected activity' prong," *Wiest*, 710 F.3d at 129—and explained that, because the ARB had reversed course in *Sylvester*, 2011 WL 2165854, therein adopting a "reasonable belief" standard and thereby overruling its prior "definitive and specific" standard

---

[9] *Cf., e.g.*, *Henrich v. Ecolab, Inc.*, ARB No. 05-030, 2006 WL 6583249, at *6-8 (Dep't of Labor June 29, 2006) (holding that "in order for [an complaining employee's] activity to be protected, [he] must demonstrate that the activity included an expression of concern—i.e., must demonstrate that he actually blew his whistle," and holding that Mr. "Henrich did not demonstrate that he actually blew his whistle").

from *Platone*, 2006 WL 3246910, *see Wiest*, 710 F.3d at 129-31, this Court should have applied

*Sylvester*'s "reasonable belief" test for determining *whether an employee's report of a violation*

*of Sarbanes-Oxley is a "protected activity" under section 806, see Wiest*, 710 F.3d at 129-34, *not*

whether a complaining employee has "stated a claim."[10] Specifically, the Court of Appeals

observed,

> In this case, the District Court did not decide this matter on the ground that Wiest's pleadings failed to support a plausible inference that Tyco knew or suspected that Wiest had engaged in protected activity. *Instead, the District Court decided that Wiest's Complaint was inadequate because the communications did not "definitively and specifically" relate to a statute or rule listed in § 806 and failed to articulate facts that supported a reasonable belief of actionable fraudulent conduct directed at investors.* Consistent with according *Chevron* deference to the ARB's holding in *Sylvester*, we have found that the standards used by the District Court were too stringent. We now turn to Wiest's Complaint to ascertain whether it states a § 806 claim for relief under the standard announced in *Sylvester*.

*Id.* at 134 (emphasis added).[11]

---

[10] The "two additional legal conclusions reached by the District Court" with which the Court of Appeals took exception also dealt with the issue of the appropriate standard for determining whether an employee's report is protected activity. *See Wiest*, 710 F.3d at 133 ("[T]he District Court erred by requiring that an employee's communication reveal the elements of securities fraud, including intentional misrepresentation and materiality."); *id.* ("The ARB held that Section 806 protects an employee's communication about a violation that has not yet occurred 'as long as the employee reasonably believes that the violation is likely to happen.'" (quoting *Sylvester*, 2011 WL 2165854, at *13)).

[11] As suggested below, the *Wiest* panel focused on adopting and applying "the standard announced in *Sylvester*." In *Sylvester*, 2011 WL 2165854, the ARB, just as the *Wiest* panel would do later, once stated the overarching legal standard—"to prevail on a SOX claim, a complainant must prove by a preponderance of the evidence that: (1) he or she engaged in activity or conduct that the SOX protects; (2) the respondent took unfavorable personnel action against him or her; and (3) the protected activity was a contributing factor in the adverse personnel action," *id.* at *7—before turning to "address the procedural and substantive errors the [administrative law judge] committed" in "conclud[ing] that the . . . complaints failed to indicate *that the Complainants engaged in SOX-protected activity* prior to their discharge," *id.* at *8 (emphasis added). The *Sylvester* opinion does not again mention "contributing factor"; nor does it discuss adverse employment actions.

In other words, the Court of Appeals explicitly noted that this Court decided the case on the application of a superseded legal standard regarding a "protected activity," and, therefore, the Court of Appeals (1) enunciated the new, correct standard and (2) then turned to *apply* that standard. Indeed, this second step is the only other issue the Court of Appeals reached: the "Application of *Sylvester*'s Reasonable Belief Standard," *id.*, *under which rubric* the Court of Appeals made the statement on which Mr. Wiest unreasonably relies ("dismissal is still appropriate if Wiest nevertheless failed to plead sufficient facts to state a claim," *id.* at 134-35). And, in fact, that statement makes sense particularly because the Court of Appeals *did* "*affirm* [this Court's] dismissal Order with respect to Wiest's communications relating to the Venetian event," *id.* at 136 (emphasis added), (as well as this "Court's dismissal Order with respect to Wiest's communications relating to the improper business expense claims of an individual employee as well as the holiday party, team meeting, and baby shower events," *id.* at 137), because, notwithstanding this Court's application of "too stringent" a standard, *id.* at 134, under the proper *Sylvester* standard, "objectively, a reasonable person in Wiest's position would not have believed that the expense request that initially lacked a detailed agenda and breakdown of expenses would constitute a violation of one of the provisions listed in Section 806," *id.* at 136. To put it bluntly: The Court of Appeals affirmed this Court's ruling because *even under* the

_____

In a short portion of their appellate brief, the Defendants addressed other potential grounds for dismissing Mr. Wiest's section 806 claim. *See* Appellees' Br. 49-53, *Wiest*, No. 11-4257 (3d Cir. April 23, 2012) ("Even if this Court were to find that Wiest has sufficiently pled that he had been engaged in a protected activity, though it should not, it should nevertheless find that the District Court's dismissal of the complaint was proper. . . ."). These arguments shared a section heading with, and followed, further arguments about why Mr. Wiest had failed to plead "protected activity." *See id.* at 44-48. The *Wiest* panel's opinion does not support reading "states a § 806 claim for relief," *Wiest*, 710 F.3d at 134, as implying that the panel performed an exhaustive analysis of all the claim's potential flaws, including those alleged deficiencies raised in the five short pages of the Defendants' appellate brief. Nor does the brief appearance of these arguments at the end of the Defendants' brief provide any reason for believing the Court of Appeals gave them much thought, either.

proper legal standard, some of Mr. Wiest's conduct was not protected activity. It was for this reason (as a plain reading of the Court of Appeals' opinion suggests) that the Court of Appeals observed that "dismissal is still appropriate if Wiest nevertheless failed to plead sufficient facts to state a claim." *Id.* at 134-35.

There is thus no negative implication that the Court of Appeals considered all other aspects of Mr. Wiest's section 806 claim and found them adequately pleaded. And, in fact, other language in the Court of Appeals' opinion belies such a contention. "*[T]he issue*"—not "issues"—"here is whether the District Court applied the correct legal standard to a claim under Section 806 of SOX," the Court of Appeals began, *Wiest*, 710 F.3d at 128 (emphasis added); and, given that the only discussion of legal standards relates to *Sylvester*'s rule superseding *Platone*'s, Mr. Wiest has no basis for arguing that any other aspects of section 806 were under review. Additionally, in discussing the case's procedural history, the Court of Appeals stated that, "[f]inding that the allegations of the Complaint failed to satisfy this standard, *the District Court did not reach the other elements of a prima facie Section 806 case*, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the Complaint without prejudice." *Wiest*, 710 F.3d at 126 (emphasis added).

If the Court of Appeals' language were not clear enough, to read its opinion as in some way deciding *sub silentio* any other issues with respect to Mr. Wiest's section 806 claim also ignores the usual division of labor among the federal courts. For a court of appeals to reach an issue not decided by the district court—especially unnecessarily—is the exception, not the rule, and appellate courts often make such an observation when remanding a case. *See, e.g.*, *Hinton v. Alabama*, 134 S. Ct. 1081, 1090 (2014) ("Because no court has yet evaluated the prejudice question by applying the proper inquiry to the facts of this case, we remand the case for

reconsideration of whether Hinton's attorney's deficient performance was prejudicial under *Strickland*." (thus indicating that Hinton's claim could *still* fail for a *different* reason *not yet reached*)). Appellate courts are reviewers, not courts of first instance. *See also, e.g.*, *Forestal Guarani S.A. v. Daros Int'l, Inc.*, 613 F.3d 395, 402 (3d Cir. 2010) ("[W]e think it unwise either to venture into this choice-of-law thicket—the outcome of which is determinative of this case— or to engage in a largely speculative exercise about the viability of Forestal's claim under either jurisdiction's law without the benefit of either any briefing whatsoever by the parties or any analysis by the District Court on this point. Because these issues deserve a full airing, we conclude that remand is a better course of action."); *Burg v. U.S. Dep't of Health & Human Servs.*, 387 F. App'x 237, 241 n.6 (3d Cir. 2010) ("The district court did not reach the summary judgment exhaustion issue, and the parties have not briefed it before us. The district court is, of course, free to address it on remand."); *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 245 n.13 (3d Cir. 2004) ("We have limited our discussion to addressing the specific ground cited by the District Court for dismissing [the claim. T]he District Court did not reach [other] issues . . . . It is more appropriate, we believe, to reserve this issue for the District Court's consideration on remand."); *Mondzelewski v. Pathmark Stores, Inc.*, 162 F.3d 778, 789 (3d Cir. 1998) (Alito, J.) ("The District Court did not reach these issues, and we decline to reach them at this time. Pathmark can renew these arguments on remand in the District Court."); *Jameson v. Bethlehem Steel Corp. Pension Plan of Bethlehem Steel Corp. & Subsidiary Cos.*, 765 F.2d 49, 53 (3d Cir. 1985) ("Because the action was dismissed, the district court did not reach the merits. Those issues should be addressed in the first instance by the district court. Accordingly, we will vacate its judgment and remand the case for further proceedings.").[12] Notwithstanding the Court

---

[12] Unsurprisingly, the ARB employs the same practices with regard to the decisions of the

of Appeals' omission of such language, nothing here suggests that it deviated from this common course. To the contrary, in remanding the "matter . . . for further proceedings consistent with [its] opinion," the Court of Appeals explained that it "reversed [this] Court's Order granting Tyco's Motion to Dismiss *as to Wiest's communications* relating to the Atlantis and Wintergreen events and affirm the dismissal *as to Wiest's communications* relating to the other events." *Wiest*, 710 F.3d at 138 (emphasis added). Again, all the Court of Appeals decided was, under a lowered standard, which of Mr. Wiest's communications were protected activities and which were not.

One might wonder that this dead horse needed such a beating, but Mr. Wiest, apparently, is still attempting to mount it to attack the Defendants' Motion to Dismiss. *See* Wiest Supp. Mem. 1 (Docket No. 48) (reasserting that a renewed Motion to Dismiss "is improper" "based on the Third Circuit's Opinion having become the law of the case"). For the reasons discussed above, however, Mr. Wiest's threshold law of the case argument fails at the starting gate, and the Court proceeds to address the issues raised by the Defendants in due course.

## B.    Standard for Evaluating a Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Although Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), the

---

administrative law judges whose decisions it reviews. *E.g.*, *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, ARB No. 04-149, 2006 WL 3246904, at *11-12 (Dep't of Labor May 31, 2006) ("The ALJ did not reach a conclusion as to whether Klopfenstein had engaged in protected activity. . . . Because of our decision to remand, we need not decide these questions here. On remand the ALJ should address those questions that are necessary to reach a decision on whether Klopfenstein engaged in protected activity.").

plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," *id.*

To survive a motion to dismiss, the plaintiff's complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) (citation and internal quotation marks omitted). Thus, assessment of the sufficiency of a complaint is "a context-dependent exercise" because "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court "must consider only those facts alleged in the complaint and accept all of the allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Twombly*, 550 U.S. at 555 (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"); *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."). The Court must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010). But that admonition does not demand that

the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions

and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-

84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice," *Ashcroft*, 556 U.S. at 678; *see also Morse v. Lower

Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a

plaintiff's "bald assertions" or "legal conclusions" (citations omitted)). Finally, "if a [claim] is

vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an

amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 236

(3d Cir. 2008).


## III.    DISCUSSION

Section 806 of the Sarbanes-Oxley Act, under the version in effect at the time of the

events at issue here, provided, in pertinent part, that

> [n]o company with a class of securities registered under section 12 of the
> Securities Exchange Act of 1934 (15 U.S.C. 78*l*), or that is required to file reports
> under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)), or
> any officer, employee, contractor, subcontractor, or agent of such company, may
> discharge, demote, suspend, threaten, harass, or in any other manner discriminate
> against an employee in the terms and conditions of employment because of any
> lawful act done by the employee to provide information . . . regarding any
> conduct which the employee reasonably believes constitutes a violation of section
> 1341, 1343, 1344, or 1348, any rule or regulation of the Securities and Exchange
> Commission, or any provision of Federal law relating to fraud against
> shareholders, when the information or assistance is provided to or the
> investigation is conducted by a person with supervisory authority over the
> employee (or such other person working for the employer who has the authority
> to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A(a)(1)(C) (2010) (internal section numbering omitted).

Although the Third Circuit Court of Appeals did not address the other aspects of Mr. Wiest's claim, it explained generally that

> [t]o establish a prima facie case for a Section 806 claim, the employee must allege that he or she (1) "engaged in a protected activity;" (2) "[t]he respondent knew or suspected that the employee engaged in the protected activity;" (3) "[t]he employee suffered an adverse action;" and (4) "[t]he circumstances were sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2)(i)–(iv).

*Wiest*, 710 F.3d at 129 (3d Cir. 2013).

The Defendants argue that Mr. Wiest's Complaint should be dismissed for four reasons. They contend that (1) Mr. Wiest suffered no adverse employment action; (2) he has not pleaded a sufficient causal connection between the alleged protected activity and the adverse employment action; (3) his allegations against the four individual Defendants are not sufficiently specific; and (4) pre–Dodd-Frank section 806 of the Sarbanes-Oxley Act did not cover employees, like Mr. Wiest, of non–publicly traded subsidiaries, such as Tyco, of publicly traded companies—here, Tyco Electronics Ltd. ("Tyco Limited"), which, the parties agree, is itself covered by section 806, but which Mr. Wiest has not named in his Complaint.

The Court concludes that Mr. Wiest has adequately pleaded (1) adverse action and (2) that his protected reports regarding the Atlantis and Wintergreen Resort Events were contributing factors to his adverse treatment, but that (3) his allegations with regard to three of the four individual Defendants, namely, Thomas Lynch, Terrence Curtin, and Charles Post, are inadequate. Finally, the Court reframes the fourth inquiry and holds that Mr. Wiest has adequately pleaded an alternative, agency-based relationship between Tyco and Tyco Limited so as to bring Tyco (and Charles Dougherty) within the rule announced in *Lawson v. FMR LLC*, 134 S. Ct. 1158.

### A. Mr. Wiest Has Adequately Pleaded an Adverse Employment Action

The parties have spilled much ink on whether Mr. Wiest has pleaded an adverse employment action, and much of it only after the Court's March 11, 2014 Order prompted them to discuss their views of the proper legal standard. The Complaint alleges the following relevant events:

"In early September, 2009, Mr. Wiest noted that his direct reports and his manager were less communicative and began acting differently to him. . . . No explanation was given . . . ." Compl. ¶ 58. Then, "[o]n September 17, 2009, just prior to leaving on a previously-planned family vacation, Wiest received a call from Susan Wallace of Tyco Human Resources . . . to meet her . . . . When he arrived, there was another Human Resources person present . . . . Ms. Wallace was the only one who spoke and the entire meeting was hostile and accusatory with no indication that any part of its purpose was to seek [Mr. Wiest's] input or explanation of the issues presented." *Id.* ¶ 59. At the meeting, Ms. Wallace charged Mr. Wiest with three types of misconduct: incorrectly reporting a gift of baseball tickets from a client, *id.* ¶¶ 60-61; an allegedly improper relationship with a female Tyco employee ten years earlier, *id.* ¶ 66; and "allegations that Wiest made sexually oriented comments to some fellow employees," *id.* ¶ 67.

Despite leveling these accusations, Ms. Wallace did not provide any information "as to who had made the accusations or when," *id.* ¶ 68, and, when Mr. Wiest told her "he was sure he could resolve any issues of offense taken by speaking directly with those involved, . . . Ms. Wallace said that there was nothing he could do at this time," *id.* ¶ 71. "The session ended with Ms. Wallace stating that the allegations were serious, the investigation was ongoing, and that she would be in touch with him," *id.* ¶ 73, notwithstanding Mr. Wiest's impression that Ms. Wallace's position on each of the issues was a mischaracterization without substantial basis. Mr. Wiest then departed for his preplanned vacation. *Id.* ¶¶ 74-75.

After he returned from his vacation, on September 24 and 25, 2009, Mr. Wiest was "isolated from his staff and his management . . . with no contact on the investigation or any normal business activity." *Id.* ¶¶ 76-77. When Mr. "Wiest asked Mr. Hofsass about the status of the investigation and whether he would have a chance to respond to the allegations . . . [h]e was told that if he had any input he had better call Ms. Wallace as it was at a very serious stage." Compl. ¶ 78. When Mr. Wiest in turn called Ms. Wallace, "[s]he again stated in a short, hostile fashion that she would let him know the outcome of her findings at some point, but that [the investigation] was serious and still ongoing." *Id.* ¶ 79. Then, on September 30, 2009, when Mr. "Wiest asked Mr. Hofsass about his performance review," Mr. Wiest "was told 'not to bother.'" *Id.* ¶ 80. Mr. Wiest left, not to return to work, later on September 30, 2009, after physiological and psychological symptoms of stress from these events had irreversibly compromised his ability to do his job. *Id.* ¶¶ 81-82.

In their Memorandum accompanying their Motion to Dismiss, the Defendants argue that Mr. Wiest's claim is one for constructive discharge, and that he cannot prevail, even if his pleadings are accepted as true, because "[a] 'constructive discharge' occurs when working conditions are *so intolerable* than an employee is essentially *forced* to quit, because the environment is such that no reasonable employee would continue to endure the employment," and Mr. Wiest's "Complaint does not plead the existence of an objectively intolerable work environment." Mot. Dismiss Mem. 7-8 (Docket No. 35) (citing *Clayton v. Pa. Dep't of Welfare*, 304 F. App'x 104, 109 (3d Cir. 2008)). The Defendants then also cite district court case law for the proposition that internal investigations, especially when they have some articulable basis, do not constitute such intolerable conditions. *See id.* at 8-9. Mr. Wiest then responded only with two short paragraphs citing no case law. *See* Mem. Opp. 10.

In response to the Court's request for further briefing in its March 11, 2014 Order, the Defendants have fortified their position with citations to case law from other circuits, *see* Def. Supp. Mem. 15-18 (Docket No. 49), while Mr. Wiest has cited the language of section 806 and a number of district court cases before finally quoting what really matters here: *Menendez v. Halliburton, Inc.*, ARB Nos. 09-002, 09-003, 2011 WL 4915750 (Dep't of Labor Sept. 13, 2011), *see* Wiest Supp. Mem. 10-13.

Section 806 states, in pertinent part, that no covered entity "may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment" in retaliation for the employee's whistleblowing activities. 18 U.S.C. § 1514A(a). Section 806's prohibition is thus relatively ambiguous. As the ARB observed in *Menendez*, "[b]y explicitly proscribing non-tangible activity, this language bespeaks a clear congressional intent to prohibit a very broad spectrum of adverse action against SOX whistleblowers." 2011 WL 4915750, at *9. But "non-tangible activity," as the ARB characterizes Congress's prohibition, is something of a nebulous concept; and along with section 806's ambiguity comes the Department of Labor's role of providing interpretive guidance, entitled to *Chevron* deference from the federal courts, through formal adjudication by the Department's Administrative Review Board. *See Wiest*, 710 F.3d at 131; *see also id.* at 141 n.5 (Jordan, J., dissenting) ("*Chevron* deference extends only to reasonable agency interpretations of *ambiguous* statutory language." (emphasis added)). And in *Menendez*, the ARB formulated the adverse action standard for section 806 as follows: "the term 'adverse actions' refers to unfavorable employment actions that are more than trivial, either as a single event or in combination with other deliberate employer actions alleged." 2011 WL 4915750, at *10 (citation omitted). Thus, a plaintiff alleging retaliation "need only demonstrate that [the allegedly retaliatory] activity would

deter a reasonable person from engaging in protected activity," *id.* at *16; this "intended

protection . . . extends beyond any limitations in Title VII and can extend beyond tangibility and

ultimate employment actions," *id.* at *10. *Cf. also Guitron v. Wells Fargo Bank*, C 10-3461 CW,

2012 WL 2708517, at *16 (N.D. Cal. July 6, 2012) (recognizing *Menendez*).

    *Menendez*'s standard certainly leaves much to be desired: it is unclear, for instance, even

whether the ARB in *Menendez* itself was consistently applying the standard it announced, *e.g.*,

*Menendez*, 2011 WL 4915750, at *16 ("The ALJ separately addressed and analyzed Menendez's

allegations and evidence of isolation, removal of duties, and demotion and found that none

constituted adverse action. As we noted above, the ALJ appeared to apply overly strict standards

to these allegations of adverse action, including requiring 'tangible job consequences,' 'long

term impact,' and 'material change in working conditions.' Nevertheless, the ALJ's conclusions

were supported by sufficient evidence, and we do not disturb them. . . ." (footnote omitted)), or

how the *Menendez* standard is not just as ambiguous as the language of section 806 itself. But it

is also clear that the facts as alleged by Mr. Wiest, when taken together with the reasonable

inferences that can be drawn from them, paint a picture of a longtime employee with prior high

performance ratings who, in a relatively short period of time, was charged (and he believed,

rather baselessly) with several counts of misconduct, not given an opportunity to respond to

these charges, told that the investigation was becoming increasingly serious, and that he should

not bother with his upcoming performance review. Moreover, *even if* a more stringent standard

were to apply, such as that from *Clayton v. Pennsylvania Dep't of Welfare*, 304 F. App'x 104,

cited in Defendants' Motion, *see* Mot. Dismiss. Mem. 12—"To establish constructive discharge,

[a plaintiff] must show that the employer knowingly permitted conditions of discrimination in

employment so intolerable that a reasonable person subject to them would resign," *Clayton*, 304

F. App'x at 109 (internal quotations marks and citation omitted); *see also, e.g.*, *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*, 717 F.3d 1121, 1133-36 (10th Cir. 2013)—it is too early, at the motion to dismiss stage, to hold that Mr. Wiest cannot meet it. His physiological responses might have been largely subjective, but if his characterizations of his isolation, Ms. Wallace's pursuit of the investigation, Mr. Hofsass's dismissiveness, and, further, Tyco's failure to follow its "U.S. Corporate Policy on Discipline," Compl. ¶ 85; *id.* Ex. S (Docket No. 1-19), "'Performance Matters' Employee's Guide," *id.* ¶ 85; *id.* Ex. T (Docket No. 1-20), and "U.S. Employee Handbook," ¶ 85; *id.* Ex. U (Docket No. 1-21)); *see also id.* ¶¶ 86–87, are true—and, at this juncture, they must be accepted as such—then a jury could well find that his continuation with Tyco had become objectively intolerable. For these reasons, the Court cannot grant the Defendants' Motion to Dismiss on the ground that Mr. Wiest suffered no adverse employment action.[13]

---

[13] Because the Court's March 11, 2014 Order requested simultaneous supplemental briefing from both parties, "Defendants request that they be allowed to provide a brief reply to those points." Def. Supp. Mem. 15. Although Mr. Wiest identified *Menendez*, neither party recognized that *Chevron* may mandate that the *Menendez* rule applies under these circumstances (in fact, to the contrary, Mr. Wiest argued that *Menendez*, on its merits (not the point of *Chevron* deference), "is quite persuasive," Wiest Supp. Mem. 11). Given the parties' focus on other grounds, the breadth of the *Menendez* standard, and the early stage of this litigation (even under *Clayton*, for instance), the Court perceives no need for further briefing on this issue at this juncture.

The Court also notes the peculiar complexity of this area of intersection between administrative and employment law and the relative dearth of case law on these issues. In *Lockheed Martin Corp. v. Administrative Review Board, U.S. Department of Labor*, 717 F.3d 1121, for instance, the Tenth Circuit Court Appeals, discussing the protected activity prong of section 806, explained: "Even if the language of § 1514A(a) were ambiguous, Lockheed's interpretation of the statute is inconsistent with the interpretation of the agency charged with its enforcement. This court affords deference to the Board's interpretation of the Act as expressed in formal adjudications under *Chevron* . . . ." *Id.* at 1131. But with respect to section 806's adverse action requirement, the court later went on to discuss constructive discharge without citing or discussing the ARB's *Menendez* decision and whether the ARB's position regarding adverse action would be due any kind of deference.

**B.** **Mr. Wiest Has Adequately Pleaded That His Protected Activity in Reporting Concerns Regarding the Atlantis and Wintergreen Resort Events Were "Contributing Factors" in His Adverse Treatment**

The Defendants next contend that, far from raising the inference that Mr. Wiest's protected activity was a contributing factor to any adverse action at their hands, "the circumstances here raise the *contrary* inference that the protected activity in which Wiest engaged was completely *unrelated* to the alleged personnel action." Mot. Dismiss Mem. 14. They focus almost exclusively, however, on the temporal relationship "between the protected activity and the alleged adverse personnel action, combined with the occurrence of multiple intervening (and contradictory events, which either break the chain of causation or, provide, by [Mr. Wiest's] own admission, a contrary explanation for his refusal to return to work at [Tyco]," *id.* 17, and cite case law pertaining mostly to the summary judgment stage. The Defendants also argue that Mr. "Wiest has not adequately pleaded facts to support the adverse employment action he *alleges*, *i.e.*, a constructive discharge, which is not surprising since he left of his own accord." Mot. Dismiss Mem. 16 n.5. In a very brief (one page) rebuttal, Mr. Wiest, citing mostly Title VII cases, argues that "the fact that Defendant's adverse action did not occur immediately after Mr. Wiest's protected activity is not detrimental." Mem. Opp. 17.

Both parties have neglected to address how "broad and forgiving" section 806's causation standard is. *See Lockheed Martin Corp.*, 717 F.3d at 1136. Section 806 provides that an action brought in federal court "shall be governed by the legal burdens of proof set forth in section 42121(b) of title 49, United States Code," 18 U.S.C. § 1514A(b)(2)(C); in turn, the section referred to requires a complainant to "make[] a prima facie showing that any behavior . . . *was a contributing factor* in the unfavorable personnel action alleged in the complaint," 49 U.S.C. § 42121(b)(2)(B)(i) (emphasis added); *see also, e.g.*, *Lockheed Martin*, 717 F.3d at 1136; *Klopfenstein v. PCC Flow Techs. Holdings, Inc.*, ARB No. 04-149, 2006 WL 3246904, at *13

24

(Dep't of Labor May 31, 2006). As the Tenth Circuit Court of Appeals explained in *Lockheed Martin Corp. v. Administrative Review Board, U.S. Department of Labor*, 717 F.3d at 1136, and the Administrative Review Board explained in *Klopfenstein v. PCC Flow Technologies Holdings, Inc.*, 2006 WL 3246904, at *13, the contributing factor standard is significantly more lenient than other causal standards. Furthermore, even if the persuasive precedential value of *Lockheed Martin Corp.* and *Klopfenstein* are set to one side, there is good reason to think that the ARB's formulation in *Klopfenstein* deserves *Chevron* deference; either way, this Court is constrained to adopt the ARB's formulation.

"A contributing factor is any factor, which alone or in combination with other factors, tends to affect in any way the outcome of the decision." *Klopfenstein*, 2006 WL 3246904, at *13 (citation and internal quotation marks omitted); *accord Lockheed Martin*, 717 F.3d at 1136. All a plaintiff needs to do at the prima facie stage is establish "an inference of causation." *Zinn v. Am. Commercial Lines Inc.*, ARB No. 10-029, 2012 WL 1143309, at *6 (Dep't of Labor Mar. 28, 2012). Temporal proximity is but one type of circumstantial or indirect evidence, although it is "not always dispositive." *Id.* In general, for the drawing of inferences, "the closer the temporal proximity, the greater the causal connection there is to the alleged retaliation; this indirect or circumstantial evidence can establish causation in a whistleblower retaliation case." *Id.*; *accord Lockheed Martin*, 717 F.3d at 1137 ("Brown's showing that her protected activity was a contributing factor in her constructive discharge was not based solely on temporal proximity."). And, of course, temporal proximity must be measured from the protected activity—the report— to the beginning of retaliatory conduct, not the ultimate adverse employment action, such as constructive discharge (or the allegation thereof). *E.g.*, *Lockheed Martin*, 717 F.3d at 1137 ("[T]he relevant time frame is not when the constructive discharge occurred, but when the

conduct leading up to the discharge began."). Nor, despite Defendants' suggestion to the

contrary, is it impermissible to draw an inference of retaliation as a contributory factor based on

a period of over several months in length. *Zinn*, 2012 WL 1143309, at * 7 ("[A] temporal

proximity of seven to eight months between protected activity and adverse action may be

sufficient circumstantial evidence to prove that the protected activity contributed to the adverse

action.").

     Here, it is important not only properly to measure the time from Mr. Wiest's protected

activity to the allegedly retaliatory conduct (not the date of his alleged constructive discharge,

but any adverse action fitting the definition laid out above, and thus including, perhaps, an

allegedly trumped-up investigation begun and/or carried out by Ms. Wallace for the purpose of

harassing or discharging Mr. Wiest[14]), but also to consider circumstantial allegations, *other than*

*those establishing temporal proximity*, that might permit an inference that Mr. Wiest's protected

reports contributed to the adverse actions taken against him. Indeed, Mr. Wiest's Complaint does

not rely on temporal proximity alone. *Cf. Wiest*, 710 F.3d at 129 ("To establish a prima facie

case for a Section 806 claim, the employee must allege that . . . (4) '[t]he *circumstances* were

sufficient to raise the inference that the protected activity was a contributing factor in the adverse

action.'" (emphasis added) (quoting 29 C.F.R. § 1980.104(e)(2)(iv))).

---

    [14] Setting out such a timeline is not bootstrapping, although, under other circumstances, it
could be. The further allegations discussed below *also* support the inference of retaliation—i.e.,
the contribution of protected activity to the alleged adverse action—and it is under these such
circumstances that the timing of an investigation like Ms. Wallace's might matter. In this sense,
the temporal allegations are not unlike co-conspirator statements, which are excepted from the
definition of hearsay only if there is some independent evidence of the conspiracy. *See* Fed. R.
Evid. 801(d)(2) ("The statement must be considered but does not by itself establish . . . the
existence of the conspiracy or participation in it . . . ."), *superseding Bourjaily v. United States*,
483 U.S. 171, 182-83 (1987) (holding that courts need not rely on evidence independent of the
out-of-court assertion of conspiracy to except the out-of-court assertion from the definition of
hearsay (and the protection of the Confrontation Clause)).

Indeed, when considered in conjunction with Mr. Wiest's other allegations, the timing of the alleged events may support the inferences Mr. Wiest needs; at least, they do not preclude those inferences. The gravamen of Mr. Wiest's Complaint is that his persistent auditing of his higher-ups' activities annoyed them enough to drive him out. As our Court of Appeals held, Mr. "Wiest has pled adequate facts to show that his communications relating to the Atlantis and Wintergreen events," which took place in mid- and late 2008, respectively, the same time frame within which Mr. Wiest raised his concerns with the management, "were protected activity under Section 806." *Wiest*, 710 F.3d at 137. From October 2008 (the Wintergreen Resort Event) to Mr. Wiest's departure in September 2009 is less than a year, and within that year, Mr. Wiest alleges, further events took place that raise the inference of his reports as a contributing factor. Mr. "Wiest also raised questions regarding the proper accounting treatment of other corporate management activities through the period from late 2007 *to as recently as September of 2009*, including a relatively lavish 'holiday party.'" Compl. ¶ 55. While the Court of Appeals held that Mr. Wiest's questions regarding these other events, including the party, did not constitute protected activities, because there could be no "plausible inference that he or any reasonable person in his position would believe that expenditures on the events rose to the level of a violation of a provision in Section 806," *Wiest*, 710 F.3d at 137, a permissible inference that *may* be drawn from these unprotected reports is that the powers-that-be were annoyed by what they perceived as Mr. Wiest's persistent needling or stonewalling, *of which his protected reports were a part*, as late as September 2009. And because the governing standard requires only that the protected activity be "*a* contributing factor" in, not the impetus for, the adverse action, this permissible inference would include the inference that those activities of Mr. Wiest's that *were* protected *contributed to* his adverse treatment. *Cf. Halloum v. Intel Corp.*, ARB No. 04-068,

2006 WL 618383, at *6 (Dep't of Labor Jan. 31, 2006) ("Callaghan's decision to modify the [Corrective Action Plan ("CAP")] was motivated in part by Halloum's protected activity. Halloum need not establish that his protected activity was the primary motivating factor in order to establish causation[, but rather that it was] a contributing factor in Intel's decision to modify his CAP.").

But, again, timing is not the sole indicium on which Mr. Wiest relies. For example, although the allegation is thin on specifics, Mr. Wiest alleges that it was "clear that there was significant frustration within the management of Dougherty's business unit as the result of Wiest's insistence on following the correct and lawful procedures as confirmed by both Catherine Smith, Supervisor reporting to Wiest, and Kevin Kelleher, Controller of the business unit involved in these events." Compl. ¶ 53. Just as telling is Ms. Wallace's investigation of Mr. Wiest—an investigation that looks—at least, as Mr. Wiest, whose well-pleaded allegations are entitled to the presumption of truth and who receives the benefit of every reasonable inference, tells it—pretextual.[15] Mr. Wiest's "belief that in September, 2009, some investigative activities [into him] had begun," Compl. ¶ 58, may not itself be entitled to the presumption of truth, but the three counts of misconduct with which Ms. Wallace charged Mr. Wiest do appear to be trumped-up. Citing Mr. Wiest for not (or mis-) reporting a gift of baseball tickets, given Mr. Wiest's own focus on proper reporting and circumstances suggesting that there should have been no problem with the tickets, *see id.* ¶¶ 61–65, resembles all too much a righteous attempt to give Mr. Wiest a taste of his own medicine. Nor do the charges of an improper relationship with a "fellow female

---

[15] "Pretext" is not used here as a Title VII term of art. Mr. Wiest does not yet have the burden of proving pretext, if, indeed, he ever will. *See Klopfenstein*, 2006 WL 3246904, at *13 ("Because, in examining causation, the 'ultimate question' is whether the complainant has proven that protected activity was a contributing factor in his termination, a complainant need not necessarily prove that the respondent's articulated reason was a pretext in order to prevail.").

Tyco employee" ten years earlier, with no "workplace impact," seem to have much merit: as Mr. Wiest alleges, the female colleague in fact reached out to him. Compl. ¶ 66; *see also* Compl. Ex. R (Docket No. 1-18) ("Jeff, Wanted to give you my home number in the event you wanted to check out the sofa and end tables. I really don't have any plans over the weekend or upcoming holidays, so you're welcome to give me a call anytime. . . ."). Although there may be more to the matter, Mr. Wiest's allegations are sufficient at this stage to raise the inference that the investigation was less than in good faith or authentic. And much the same could be said about Ms. Wallace's alleged statements about Mr. Wiest's "sexually oriented comments," at least some of which occurred several years earlier. Compl. ¶ 67. Although the standard by which sexual harassment is judged is certainly not "what is regularly seen on prime time television programming," the comments (as alleged) would not lead a listener to believe that an investigation into the person who spoke them would be "serious," *id.* ¶ 79, and involve shielding from Mr. Wiest the identity of those "who had made the accusations," *id.* ¶ 68. Moreover, Mr. Wiest had "never received a single negative job review or oral or written reprimand in his personnel records," *id.* ¶ 28; in fact, he had received high ratings and an "impact bonus," *id.* ¶¶ 29–30.

Finally, the Defendants lose sight of the relevance of Tyco's knowledge of Mr. Wiest's protected activity. Mr. Wiest reported his concerns to higher-ups at Tyco, not, for instance, secretly to a governmental agency. And, as one court has explained, "the fact that one of the persons responsible for Plaintiff's termination knew of the protected activity provides the jury with sufficient evidence to find that Plaintiff's report was a proximate cause of his termination." *Leshinsky v. Telvent GIT, S.A.*, 942 F. Supp. 2d 432, 450 (S.D.N.Y. 2013); *compare id. with, e.g.*, *Boyd v. Accuray, Inc.*, 873 F. Supp. 2d 1156, 1170-71 (N.D. Cal. 2012) (granting summary

judgment in favor of defendants because, inter alia, "none of [the plaintiff's exhibits] supports the inference that any of Plaintiff's supervisors was aware of Plaintiff's SEC complaint, and thus was aware that Plaintiff had engaged in protected activity under SOX"). Although the issue of a defendant's knowledge is a question in its own right, *see* 29 C.F.R. § 1980.104(e)(2)(ii), and who knew what, and who did what, are topics of the next section's discussion, this point sharpens the contributing factor analysis. For these reasons, Mr. Wiest has sufficiently alleged that his protected activities were a contributing factor in his adverse treatment.

### C.    Mr. Wiest's Allegations Are Not Sufficiently Specific Regarding Messrs. Lynch, Curtin, and Post

Defendants argue that "[w]hether or not Wiest has properly alleged an adverse employment action or causation, . . . the Court should nevertheless dismiss the Complaint against all of the individual defendants." Mot. Dismiss Mem. 18. The Court agrees, except as to Mr. Dougherty.

Mr. Wiest, in the only paragraph in his briefing submissions addressing the sufficiency of his allegations against the individual Defendants, argues that "his Complaint clearly shows that each of the named Defendants knew of Mr. Wiest's protected activity." Mem. Opp. 12. He argues:

> Defendant Lynch was the individual who had to sign off on the expenses Mr. Wiest questioned (Complaint ¶¶ 37-38). Mr. Wiest complained directly to Defendant Curtin about the party at the Wintergreen Resort (Complaint ¶ 52). Defendant Post was the senior employment counsel for Defendant Tyco and may have been involved in targeting Mr. Wiest, but Plaintiff has no further specific information about him without discovery (Complaint ¶ 24). Defendant Dougherty was in charge of and responsible for the actions of the business unit attempting to throw the parties (Complaint ¶ 45). Finally, a number of Defendant Tyco's members of its board of directors were aware of Mr. Wiest's protected activities, and nonetheless, Defendant Tyco, by and through its agents, took adverse employment action against Mr. Wiest.

Mem. Opp. 12.

With respect to individual defendants, a defendant's knowledge of a plaintiff's protected activities, taken alone, does not render that defendant liable. Section 806 itself prohibits a publicly traded company or its employee or agent from

> discriminat[ing] against an employee because of any lawful act done by the employee to provide information . . . , when the information or assistance is provided to . . . a person with supervisory authority over the employee (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct).

18 U.S.C. § 1514A(a)(1)(C). The Department of Labor's prima facie test requires a complaining employee to show that the defendant "knew or suspected that the employee engaged in the protected activity" under "circumstances . . . sufficient to raise the inference that the protected activity was a contributing factor in the adverse action." 29 C.F.R. § 1980.104(e)(2). These standards only make sense when read to require that those involved in the adverse employment action have knowledge of the protected activity—otherwise, no such inference can be drawn. Thus, a "[p]laintiff's Complaint must sufficiently set forth facts 'on its face' that [the named individual] Defendants knew that he had engaged in protected activity, were involved in the alleged adverse employment action, and that a causal connection exits between the protected activity and the adverse employment action taken by the named Defendant." *Bury v. Force Prot., Inc.*, No. 09-1708, 2011 WL 2935916, at *1 (D.S.C. R&R June 27, 2011), *adopted*, 2011 WL 2929827 (July 19, 2011); *see also, e.g.*, *Jordan v. Sprint Nextel Corp.*, --- F. Supp. 2d ----, No. 12-2573, 2014 WL 941824, at *11 (D. Kan. Mar. 11, 2014) ("Plaintiff fails to state a claim against Defendant Forsee because there are no allegations that Forsee personally undertook any actions against Plaintiff."); *Klopfenstein v. PCC Flow Techs. Holdings, Inc. (Klopfenstein II)*, ARB Nos. 07-021, 07-022, 2009 WL 2844805, at *6-8 (Dep't of Labor Aug. 31, 2009) ("[Mr.] Parrott was not a PCC agent in Klopfenstein's discharge. . . . [H]e was not a decision maker in

the termination of Klopfenstein's employment. . . . [Thus, the corporate defendant], but not Parrott, was an agent of PCC, and therefore a proper respondent under the facts as found in this case.").

Although resolution of this issue may often be more appropriate at the summary judgment stage, if "[t]he undisputed facts establish that none of the . . . management officials involved in or responsible for [the plaintiff's] termination were aware of any of his alleged protected activity," the plaintiff cannot prevail. *Fredrickson v. Home Depot U.S.A., Inc.*, ARB No. 07-100, 2010 WL 2158225, at *5 (Dep't of Labor May 27, 2010); *see also, e.g.*, *Leshinsky*, 942 F. Supp. 2d at 451-52 ("In retaliation cases, . . . district courts have consistently held that, with regard to the causation prong of the prima facie standard, absent any evidence to support an inference that *the decisionmakers* knew of plaintiff's protected activity, plaintiff cannot rely on circumstantial evidence of knowledge as evidence of causation." (emphasis added) (emphasis, citations, and alterations omitted)). It is one thing to say that a plaintiff's complaint may plead circumstantial grounds for inferring that a protected activity was a contributing factor, but the inferential chain may become too attenuated when the knowledge or identity of the decisionmaker is *also* left to inference, and all that the plaintiff can allege is knowledge of the protected activity on the part of certain higher-ups who may or may not have been involved in the adverse action (or, conversely, higher-ups who were involved in the adverse action but who had no knowledge of the protected activity). Allegations are less adequate still when they name individuals who both may or may not have had knowledge and may or may not have had a decisionmaking role.

Here, Mr. Wiest's Complaint is simply too thin with regard to three of the four individual Defendants he has named. All the Complaint says about Mr. Lynch is that (1) he "was the Chief

Executive Officer and Director of Tyco Limited" and, upon information and belief, he was "also the Chief Executive [O]fficer of Defendant Tyco," Compl. ¶¶ 17–18; and (2) he was personally involved in the potentially illegal activity that Mr. Wiest reported, *id.* ¶ 19. Neither of these allegations, taken as true, establish that Mr. Lynch knew of Mr. Wiest's reports or had anything to do with Mr. Wiest's termination. In fact, Mr. Wiest alleges that he insisted that Mr. Curtin copy Mr. Lynch on an email, but Mr. Curtin did not. *Id.* ¶ 52; *id.* Ex. N. Conclusory allegations (Compl. ¶¶ 96–97) cannot be accepted as true without some substantiation through factual allegations. The Complaint must therefore be dismissed as to Mr. Lynch.[16]

The Complaint says little more about Mr. Curtin: (1) he "was the Executive Vice President and Chief Financial Officer of Tyco Limited," and, upon information and belief, "also the chief financial officer of Defendant Tyco," Compl. ¶¶ 20–21; and (2) he knew of Mr. Wiest's protected activity because Mr. Wiest brought up his concerns about the violation of internal control procedures with Mr. Curtin, *see id.* ¶ 52; *id.* Ex. N (Docket No. 1-14). These allegations are not enough to allow Mr. Wiest's Complaint to proceed against Mr. Curtin; from them, the Court cannot draw a reasonable inference of Mr. Curtin's involvement in Mr. Wiest's adverse treatment. In fact, outside of implicitly alleging, in essence, that Mr. Curtin was inconvenienced for the length of time necessary to write, "Jeff [referring to Mr. Wiest], I am approving the entire cost," *id.* Ex. N—thereby, in essence, dismissing Mr. Wiest's concerns about violations of internal controls, etc.—the Complaint contains no allegations, from which it might be inferred that Mr. Curtin participated in any adverse action against Mr. Wiest, that Mr. Curtin was

---

[16] It should be evident that absent sufficient allegations of an individual Defendant's involvement in his alleged adverse treatment, Mr. Wiest cannot state a claim against that individual defendant for intentional infliction of emotional distress (Count II) or wrongful termination (Count III), nor his wife for loss of consortium (Count IV).

involved in, or concerned about, Mr. Wiest's other reports. Mr. Wiest's Complaint is dismissed as to Mr. Curtin.[17]

As the Defendants point out, nothing more need be said regarding Mr. Post: Mr. Wiest has alleged that Mr. Post "was *possibly* involved with the inappropriate investigation, harassment, hostile environment, and constructive termination of Wiest." Compl. ¶ 24 (emphasis added). The Complaint must be dismissed as to Mr. Post, as well.[18]

But Mr. Wiest does just barely state a claim against Mr. Dougherty. According to the Complaint, Mr. Dougherty "was the President of Wireless Systems, a Defendant Tyco Business Unit, and was involved with activities constituting potential fraud on Tyco Limited stockholders and attempted violations of tax laws." Compl. ¶ 22. More specifically, Mr. Dougherty was involved in "management discussion" about whether "to go ahead with the [Atlantis] event," even after Mr. Wiest had raised his concerns. *Id.* ¶ 45. In other words, Mr. Dougherty knew (or, at least, it can be inferred that he knew) of Mr. Wiest's protected activity. Finally, Mr. Wiest alleges, "[i]t became clear that there was significant frustration within the management of Dougherty's business unit as the result of Wiest's insistence on following the correct and lawful procedures as confirmed by both Catherine Smith, Supervisor reporting to Wiest, and Kevin Kelleher, Controller of the business unit involved in these events." *Id.* ¶ 53. While there is little more in Mr. Wiest's Complaint regarding Mr. Dougherty, this hearsay allegation barely—just barely—suffices to permit an inference that Mr. Dougherty was somehow involved in Mr.

---

[17] *See supra* note 16.

[18] *See supra* note 16.

Wiest's termination. Mr. Wiest may therefore proceed with his section 806 claim against Mr. Dougherty.[19]

### D. Mr. Wiest May Proceed Against Tyco and Mr. Dougherty on the Grounds That Tyco Was an Agent of Publicly Held Tyco Limited

The parties' initial briefing, combined with their responses to the Court's March 11, 2014 Order, suggested that the Court had to resolve whether pre–Dodd-Frank section 806 protected employees of non–publicly held subsidiaries of publicly held corporations.[20] Upon further review, however, the Court finds that it need not reach this question, because, as Mr. Wiest highlighted (without elaboration) in his Memorandum in Opposition, section 806 provides that "[n]o company . . . *or such agent of such company*" may discriminate against an employee for that employee's protected whistleblowing activity. 18 U.S.C. § 1514A(a).

Both parties ostensibly ignore the potential impact of the Supreme Court's recent *Lawson* decision with respect to the question of whether an employee of an agent was covered by pre–Dodd-Frank section 806. If there was any doubt, perhaps sowed by the First Circuit Court of Appeals' opinion in *Lawson*, *see* 670 F.3d 61 (1st Cir. 2012), *rev'd*, 134 S. Ct. 1158, that employees of agents of publicly held companies were protected—rather, that is, than only employees of publicly held companies' being protected from termination by agents of those publicly held companies acting as "ax-wielding specialist[s]," *Lawson*, 134 S. Ct. at 1166—the Supreme Court's decision in *Lawson* should have resolved it by analogy to contractors.

---

[19] For the sake of clarity, the Court observes that Mr. and Mrs. Wiest's state law claims against Mr. Dougherty also survive, for the same barest of reasons. *Cf. supra* note 16.

[20] *See supra* note 7 and accompanying text.

In *Lawson*, the First Circuit Court of Appeals had opined that "only the employees of the defined public companies are covered by [section 806's] whistleblower provisions," not employees of any of the entities listed in the statute's next clause, including officers, contractors, and agents of those public companies. 670 F.3d at 68. The Supreme Court reversed, holding "that 18 U.S.C. § 1514A whistleblower protection extends to employees of contractors and subcontractors," *Lawson*, 134 S. Ct. at 1176, and, further, "find[ing] that the statutory text unambiguously affords protection to personal employees of public company officers and employees. § 1514A(a)," *Lawson*, 134 S. Ct. at 1168 n.11. There is no reason to think that the Supreme Court's holding in *Lawson* does not also apply, beyond contractors of public companies, to agents of public companies and those agents' employees. And whether its decisions are entitled to *Chevron* deference, *see Lawson*, 134 S. Ct. at 1168 n.11, the ARB's discussion in *Spinner v. Landau & Associates, LLC*, ARB Nos. 10-111, 10-115, 2012 WL 1999677 (Dep't of Labor May 31, 2012), makes clear that at least the ARB and DOL read section 806's provisions as extending protection to employees of agents of publicly held companies. *See also, e.g.*, 29 C.F.R. § 1980.101 (2009; pre–Dodd-Frank) ("Company representative means any officer, employee contractor, subcontractor, or agent of a company. . . . Employee means an individual . . . working for a company or company representative . . . ."); *id.* § 1980.101(f) (2011; post–Dodd-Frank) ("Covered person means any company, including . . . any officer, employee, contractor, subcontractor, or agent of such company . . . ."); *Lawson*, 134 S. Ct. at 1174 ("More telling, at the time of the Dodd-Frank amendments, DOL regulations provided that § 1514A protects contractor employees. . . ."); *Klopfenstein*, 2006 WL 3246904, at *10 ("Nothing in . . . the Act, the interim and final regulations, and the common meaning of the

term 'agent' gives us reason to conclude that a subsidiary, or an employee of a subsidiary, cannot *ever* be a parent's agent for purposes of the employee protection provision.").

Under the ARB's approach,

> Whether a particular subsidiary or its employee is an agent of a public parent for purposes of the SOX employee protection provision should be determined according to principles of the general common law of agency. General common law principles of agency are set forth in the Restatement of Agency, a "useful beginning point for a discussion of general agency principles." [*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 755 (1998).] Although it is a legal concept, "agency depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control." Rest. 2d Agen. § 1(1), comment b.

*Klopfenstein*, 2006 WL 3246904, at \*10; *see also id.* at \*10 nn.15-16; *accord, e.g.*, *Rao v. Daimler Chrysler Corp.*, No. 06-13723, 2007 WL 1424220, at \*5 (E.D. Mich. May 14, 2007).

Notwithstanding the greater certainty on the general issue of the liability of agents of public companies, there is some disagreement among lower courts and the ARB as to the scope or nature of the required agency relationship, and, to the Court's knowledge, no tribunal has considered the issue of the scope or nature of the required agency relationship since the Supreme Court's decision in *Lawson*. Under the narrower view, "[t]he relevant consideration . . . is whether [the publicly held parent corporation] was involved in [its alleged agent's employee's] hiring, supervision or termination." *Malin v. Siemens Med. Solutions Health Servs.*, No. 07-1896, 2009 WL 2500289, at \*2 (D. Md. Aug. 13, 2009) (internal quotation marks omitted). Within this framework, one district court characterized the ARB's *Klopfenstein* decision, 2006 WL 3246904, as requiring "the agency at issue [to] relate to employment matters in order to be covered under the whistleblower protection provisions of § 1514A," such as by a finding, for instance, "that the public parent was acting as the non-public subsidiary's agent with regards to the complainant's termination." *Rao*, 2007 WL 1424220, at \*5.

More recently, however, in *Johnson v. Siemens Building Technologies, Inc.*, ARB No. 08-032, 2011 WL 1247202 (Dep't of Labor Mar. 31, 2011) (en banc), the ARB continued to expand section 806's coverage. The administrative law judge ("ALJ") below had held that the defendant, a subsidiary of publicly held Siemens, was not covered as Siemens's agent because the judge "found no evidence that Siemens . . . controlled employment decisions at [the defendant subsidiary], knew of [the plaintiff's] concerns about accounting irregularities, or played any role in the termination of her employment." *Id.* at *12. In reversing on the *alternative* ground "that a consolidated subsidiary is covered under Dodd-Frank, and the indication in the record that [the defendant] was a consolidated subsidiary at all relevant times," the ARB "decline[d] to discuss further subsidiary coverage under agency law,"[21] but nevertheless hinted that "[t]he ALJ, by exclusively focusing on the agency factors upon which the [ARB's] ruling in *Klopfenstein* turned, failed to consider alternative bases and factors upon which common law agency might be established." *Id.* Deputy Chief Administrative Appeals Judge E. Cooper Brown's concurrence in *Johnson*, however, addressed the agency issue in thorough detail suggesting the direction in which the ARB is headed. He opined:

> In finding the subsidiary in *Klopfenstein* to have acted as an agent of the publicly traded parent company with regard to the challenged employment action therein at issue, the Board focused on the common law factors relevant to a determination under employment law of the existence of "actual" agency authority. However, "actual authority" is not the only basis upon which common law agency may be found in an employment or labor law context. Common law agency contemplates

---

[21] *Siemens* stands for the proposition that pre–Dodd-Frank section 806 also covers non–publicly held subsidiaries of otherwise covered (because publicly held) companies; this issue is the one the Court deems unnecessary to resolve. *Cf., e.g.*, *Mart v. Gozdecki, Del Giudice, Americus & Farkas LLP*, 910 F. Supp. 2d 1085, 1093 (N.D. Ill. 2012) ("Several courts and administrative panels have examined whether Dodd-Frank clarifies or alters section 806 of SOX. *Leshinsky v. Telvent GIT, S.A.*, 873 F. Supp. 2d 582, 591-601 (S.D.N.Y. 2012); *Ashmore v. CGI Grp. Inc.*, 2012 WL 2148899, at *4 (S.D.N.Y. Jun. 12, 2012) . . . ." (citations reformatted)); *see also supra* note 7.

at least two other basis for attributing legal consequences of one party's actions to another party, *i.e.*, "apparent authority" and "respondeat superior." By exclusively focusing on the agency factors upon which the Board's ruling in *Klopfenstein* turned, the ALJ in the instant case failed to consider these alternative bases for establishing agency within an employment law context. . . .

Fundamentals of statutory construction support the conclusion that liability for retaliation against whistleblowing extends to an agent of a publicly traded company engaged in securities related activities *independent* of whether or not the infringing entity acts as the agent of the public company with respect to the challenged adverse employment action. . . .

To interpret "agency" under Section 806 as limited to imposing liability in only those situations where an entity acts as a publicly traded company's agent in an employment/labor law context would fly in the face of the foregoing canons of statutory construction, for such an interpretation would effectively render the words "officer, employee, contractor, subcontractor" superfluous. . . .

We are well aware of the lower court decisions that have reached a contrary conclusion. Nevertheless, the rationale adopted by the courts is unpersuasive. In each instance, the court was concerned that viewing "agency" as applicable to anything other than an employment/labor law context would result in expansion of Section 806's coverage protection far beyond Congress's intent. In *Brady v. Calyon Secs.*, 406 F. Supp. 2d 307 (S.D.N.Y. 2005), the court refused to impose liability for whistleblower retaliation on a securities broker for publicly traded companies for fear that doing so would result in the adoption of "a general whistleblower protection provision governing the employment relationships of any privately-held employer, such as a local realtor or law firm, that has ever had occasion, in the normal course of its business, to act as an agent of a publicly traded company, even as to employees who had no relation whatsoever to the publicly traded company." 406 F. Supp. 2d at 318. For similar reasons, in *Malin v. Siemens Med. Solutions Health Servs.*, 638 F. Supp. 2d 492 (D. Md. 2008), agency liability was rejected in the absence of a showing that the agent acted on behalf of the public company with respect to the alleged retaliation. *See also Rao v. Daimler Chrysler Corp.,* 2007 WL 1424220 (E.D. Mich. 2007) (not reported) (general agency relationship between the public parent and non-public subsidiary insufficient to implicate whistleblower provisions of Section 806).

Assuredly, Section 806 does not go so far as to create a general whistleblower protection provision imposing liability on any private company or entity acting as an agent of a publicly traded company with respect to any matter whatsoever. However, a proper construction of the scope of agency coverage outside of the employment law context is more limited. Outside of the employment law context, an entity will be held independently liable as a covered agent under Section 806 where it is established that the entity engaged in retaliatory conduct was serving as the public company's agent with respect to securities related matters.

In terms of what a whistleblower must prove to establish the agency relationship referenced in Section 806, distinguishing SOX as predominantly an

antifraud measure is significant. Construed as an antifraud provision, rather than an employment or labor law, it is sufficient, as an example, to establish that the retaliating entity exists as an agent of the publicly traded parent company for purposes of producing accounting or financial information which is consolidated into the parent's financial reports, or that an agent or contractor facilitated fraud like the subsidiaries, off-the-books special purpose entities (SPEs), and the accounting firms that helped precipitate the financial collapse of Enron, the key corporate figure in the legislative history of Sarbanes-Oxley. In such instances, the focus for coverage purposes is on the agent's role in preparing financial data or its participation in fraud or deception.

Construing Section 806 as extending coverage to an agent of a publicly traded company engaged, on behalf of that company, in securities related activities, thereby imposing liability for whistleblower retaliation upon such an entity, is not to say that Section 806 precludes an employment law agency analysis for purposes of finding the publicly traded company liable (or for holding the agent liable in such a context, as was the case in *Klopfenstein*). At the same time, an employment law agency analysis does not preclude inquiry under Section 806 into whether the entity charged with retaliation exists as an agent of a publicly traded company for securities related purposes, nor does it bar the imposition of liability upon an agent acting in such capacity where it independently retaliates against a whistleblower in violation of Section 806.

*Siemens*, 2011 WL 1247202, at *14-18 (Brown, J., concurring) (citations, internal quotation marks, and footnotes omitted).

In addition to Judge Brown's persuasive reasoning and possible reasons for deferring to such a position as may become a majority of the ARB's in an appropriate case in the future, the Supreme Court's decision in *Lawson* also suggests that Judge Brown's approach is largely correct. (However improbable the situation would be, section 806 covers "includes employees of public company officers and employees," such as "housekeepers or gardeners," who "come upon and comprehend evidence of their employer's complicity in fraud," *Lawson*, 134 S. Ct. at 1168.) The main modification to Judge Brown's view would be that, in addition to agency based on engagement "in securities related activities," agency might also be based on types of services with regard to which fraud contemplated under section 806 might be perpetrated (in essence,

Judge Brown's rationale). In other words, agency could also be based on the performance, inter alia, of accounting and tax services and the like, as here.

Here, Mr. Wiest's Complaint contains sufficient allegations—although Mr. Wiest does not go so far as to identify, collect, and analyze them—to establish, for purposes of adjudicating the Defendants' Motion to Dismiss, that Tyco acted as an agent for Tyco Limited, which, Defendants do not dispute, is allegedly covered by section 806.

Mr. Wiest was "manager of Accounts Payable for the U.S. Financial Shared Services Center" of Tyco. Compl. ¶ 2. Mr. Lynch was Tyco Limited's CEO and Director, *id.* ¶ 17; Mr. Wiest also believes that Mr. Lynch was Tyco's CEO, *id.* ¶ 18. Similarly, Mr. Curtin was the CFO and Executive Vice President of Tyco Limited, *id.* ¶ 20, and Mr. Wiest likewise believes that Mr. Curtin was Tyco's CFO, *id.* ¶ 21. Mr. Dougherty, "the President of Wireless Systems, a Defendant Tyco Business Unit," *id.* ¶ 22, was "also on the board of directors of Tyco Limited," *id.* ¶ 23.

Mr. Lynch, as CEO, gave his approval for the Atlantis Resort Event, *see* Compl. ¶¶ 37–38; *id.* Ex. G (Docket No. 1-7), after Mr. Wiest initially refused to process Atlantis expenditures reportedly out of concern for their legitimacy and the control processes involved in approving them, *see id.* ¶ 34–35, 37. After the relevant management, including Mr. Dougherty and Mr. Curtin, decided (in Wiest's view, properly) to treat as taxable income what they were trying to pass off as business expenses, the management also decided to "pay each highly employee an additional amount of cash beyond the value of the trip in order to cover his/her tax liability." *Id.* ¶ 45. Similarly, the Venetian and Wintergreen Resort Events "involv[ed] the same business unit (under Dougherty) [and] were presented to Wiest's function for payment with inaccurate accounting/tax treatment and insufficient documentation for tax purposes." Compl. ¶ 50; *see id.*

¶ 51. When Mr. Wiest flagged the invoice for the Wintergreen Resort Event, Mr. Wiest insisted that Mr. Curtin approve of it, and Mr. Curtin did so. *Id.* ¶ 52; *id.* Ex. N.

Mr. Wiest alleges that "[a]t all times relevant hereto, Defendant Tyco was acting as an agent of Tyco Limited." Compl. ¶ 91. This theory will quite likely be tested on the evidence later, but Mr. Wiest has alleged enough at this juncture for the Court to draw the reasonable inference that that allegation is entitled to the presumption of truth. The setup described—in which (1) Messrs. Lynch and Curtin were CEO and CFO, respectively, of Tyco Limited, and (2) they had to approve certain expenditures before Mr. Wiest, a Tyco accounting manager, would process them—is a strong indicator of an agency relationship regarding accounting and taxes between Tyco and Tyco Limited (the fact that Mr. Wiest has not stated a claim against those individuals is an entirely separate matter). If, as Judge Brown observed, "[o]utside of the employment law context, an entity will be held independently liable as a covered agent under Section 806 where it is established that the entity engaged in retaliatory conduct was serving as the public company's agent with respect to securities related matters," *Siemens*, 2011 WL 1247202, at *17, it seems clear enough from the allegations here that Tyco served as Tyco Limited's agent with respect to accounting- and tax-related matters (and that Tyco took adverse action against Mr. Wiest).[22]

---

[22] *Cf. also, e.g.*, *Klopfenstein*, 2006 WL 3246904, at *10 ("Robbins, who made the decision to terminate Klopfenstein's employment, was both President of Holdings [the non–publicly held subsidiary] and Executive Vice President of PCC [the publicly held parent]. As an officer of PCC, Robbins was its general agent, and thus almost certainly was an agent of PCC with regard to the termination of Klopfenstein's employment. As President of Holdings, Robbins was indisputably within that class of an employer organization's officials who may be treated as the organization's proxy. Putting these two concepts together, it is hard to imagine that Holdings was not PCC's agent for purposes of the termination of Klopfenstein's employment." (internal quotation marks and footnotes omitted)).

Mr. Dougherty presents a slightly more complicated question. Whether the analysis properly comes under the umbrella of the agency issue or otherwise under another prong of the section 806 standard, only if Mr. Dougherty was involved in Mr. Wiest's discharge can he be held individually liable. *E.g.*, *Klopfenstein II*, 2009 WL 2844805, at *6 ("[W]e agree that [Mr.] Parrott was not a PCC agent in Klopfenstein's discharge. Although a Flow Vice President of Finance, [Mr. Parrott] held no other offices. Although he investigated the revenue recognition issue and prepared a report, he was not a decision maker in the termination of Klopfenstein's employment." (citation omitted)). But, as discussed earlier, that question belongs to a later stage of this litigation. For now, Mr. Wiest has adequately pleaded a case against Mr. Dougherty.

## IV.    CONCLUSION

For the reasons articulated above, Defendants' Motion to Dismiss (Docket No. 35) is granted in part and denied in part. At this stage of the litigation, Mr. Wiest has sufficiently pleaded an adverse employment action to which his protected reports were a contributing factor. He has also adequately pleaded an agency relationship between Tyco and Tyco Limited such that the Court need not consider whether pre–Dodd-Frank section 806 of the Sarbanes-Oxley Act covered (or post–Dodd-Frank section 806 retroactively covers) non–publicly held subsidiaries of publicly held companies. But, except as to Mr. Dougherty, Mr. Lynch has not pleaded claims against the individual Defendants here, and so his Complaint will be dismissed as to Messrs. Lynch, Curtin, and Post. Defendants Tyco and Mr. Dougherty remain. Mr. Wiest may, of course, seek the Court's leave, which is "freely give[n] . . . when justice so requires," Fed. R. Civ. P. 15(a)(2), to amend his Complaint if circumstances so warrant.

An Order consistent with this Memorandum follows.


BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge